

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0363-08

**GREGORY EARL POLLARD, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### KERR COUNTY

**HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, WOMACK, JOHNSON, KEASLER, HOLCOMB and COCHRAN, JJ., joined. PRICE, J., concurred.**

### **O P I N I O N**

We granted discretionary review in this case to address whether the "victim's knowledge of [appellant's] violent past" was relevant in this retaliation-by-threat case.[1] We decide that this evidence was not relevant.

---

[1]

*See* § 36.06(a)(1)(A), TEX. PEN. CODE, (person commits retaliation if the person intentionally or knowingly threatens to harm another by an unlawful act on account of the service of another as a prospective witness).

Appellant was convicted of retaliation by "intentionally or knowingly" threatening to hurt his much younger friend (Kirk) on account of Kirk's service "as a prospective witness." The evidence shows that appellant was indicted for aggravated sexual assault of a fourteen-year-old girl. Before this, Kirk, who considered appellant a father figure, had made a statement to the police implicating appellant in this offense. Kirk retracted this statement shortly after appellant was indicted in the sexual-assault case. Kirk later told the police that he retracted this statement because appellant threatened to hurt him or have a biker named "Wolf" hurt him. Kirk testified that he feared appellant would carry out his threat to hurt him. Kirk did not testify that his knowledge of appellant's "violent past" contributed to his fear of appellant, or contributed to his retraction of his initial statement implicating appellant in the sexual-assault case, or caused him to be more likely to believe that appellant would carry out his threat to hurt him.

During the guilt phase of appellant's trial in the retaliation case, the State spent a good deal of time making the jury aware that appellant had been convicted of murder in 1986 ("the 1986 murder conviction"). The admissibility of this evidence was discussed twice before appellant's trial in the retaliation case began. The State claimed that this evidence was relevant to show that appellant's threat to Kirk "was legitimate and could be carried out" and to show that appellant's motive for threatening Kirk was to avoid the 1986 murder conviction from being used to enhance his punishment in the sexual-assault case.

> [STATE]: [The State] can foresee testimony about the–[appellant's] prior offense of murder coming in in the case in chief, and there are a couple of ways that I could see it coming in.
>
> One is the, quote, victim in the case, Chris Kirk, was aware that [appellant] had killed somebody, so when the threats were made against him, it gave him an increased feeling that this threat was legitimate and could be carried out. I've supplied a copy

to Defense counsel here.

And the second thing is, Judge, the–the [appellant] is well aware having been to the penitentiary before that if he were convicted in the sex assault case, he would be enhanced pursuant to the provisions of the Code that provide for enhancement upon proof of that prior conviction, and he'd be facing a substantial amount of time in the penitentiary. It would enhance it to life in the penitentiary.[2]

When the admissibility of appellant's 1986 murder conviction came up again before trial, the

State still claimed that this evidence was admissible to show appellant's motive for threatening Kirk.

[STATE]: Your Honor, it also goes to [appellant's] motive for the commission of the offense at bar, to wit, the obstruction or the retaliation as [appellant] had knowledge of the fact that on the sex assault case he would be enhanced due to the prior conviction. You know, you've got to ask yourself as a juror why would somebody do this, and that goes to [appellant's] motive in tampering with and obstructing and retaliating against these witnesses.
.
The State informed the trial court that it also intended to present evidence that appellant told

Kirk that he had killed a person (the murder victim in appellant's 1986 murder conviction) to show

Kirk's state of mind, "what he was told by appellant," and that Kirk was "scared to death" of

appellant.[3]

[STATE]: Well, the–the context that I will talk about it is not as a conviction. It would be the–the state of mind of the victim, what he was told by [appellant]. I don't think they used the word "conviction." It was something to the effect of I've killed a man or I've killed a guy or something like that.
* * *
So none of that makes sense unless you understand from the victim's perspective what was going through his mind, that he really thought that not only had the threat been made, but that it could certainly be carried out, and he's scared to death of the

---

[2]

The defense responded that "enhancement on punishment [was] stretching the issue on motive to say that this motivated [appellant] to do something."

[3]

This would not have necessarily informed the jury that appellant had actually committed a murder or had been convicted of committing a murder.

guy.[4]

The trial court decided that appellant's 1986 murder conviction was admissible to show appellant's motive for threatening Kirk ("there was a–a threat, and the–the threat being a question of the motive of the–to preclude [appellant] from possibly going back to prison"). The trial court also decided that the 1986 murder conviction was admissible because it "add[ed] credibility to the victim's state of mind that says [appellant] is capable of carrying out this threat."[5]

During its opening statements, the State informed the jury that it would present evidence that Kirk was "scared to death" of appellant because Kirk knew that appellant "had in the mid '80s killed a man."[6] The State also informed the jury that appellant's 1986 murder conviction was relevant to appellant's motive for threatening Kirk in the sexual-assault case.

> [STATE]: Let me add one more thing to that. [Appellant] tells Chris Kirk, You better take this seriously, and Chris Kirk did because he had knowledge that [appellant] had in the mid '80s killed a man. Chris Kirk was scared to death.
>
> * * *
>
> [Appellant], like I said at the very beginning, is under the gun. He was convicted to do ten years for murder in the '80s, and he doesn't want to go back to the penitentiary, and I submit that the evidence is going to show that he would do whatever it takes to keep that from happening, and that includes leaning on Chris

---

[4]

The defense objected that the only purpose of the evidence of what appellant told Kirk was "to conform character of the person" under TEX. R. EVID. 404(b).

[DEFENSE]: My–my objection to that, of course, is that it's a violation of Rule 404(b) in that it–it's–the only purpose of this is–is to–to conform character of the person, and that–that's a violation of the Rule. It's a 404(b) violation.

[5]

We note that this does not constitute a ruling on the admissibility of the evidence that appellant told Kirk that he had killed a person for the purpose of showing Kirk's state of mind.

[6]

Kirk never testified at trial, however, that he was "scared to death" of appellant because he knew that appellant "had in the mid '80s killed a man."

Kirk with the threat of death and bodily injury to shut him up, to silence him just like a Hollywood movie because he knows that if he's convicted, he's going to be an enhanced offender.

Your second time around. Remember we talked about that? It bumps up a notch, and he's facing two to twenty in the penitentiary, and that's his motive for doing this to Chris Kirk.

The trial court's charge instructed the jury to consider appellant's 1986 murder conviction for the purpose "of determining motive." During its closing jury arguments, the State argued that appellant's 1986 murder conviction was relevant to the issue of appellant's motive for threatening Kirk in the sexual-assault case.

[STATE]: But [appellant] knows also that this ain't his first rodeo. He knows when you go back there, you look at State's Exhibit 5, and then you'll know what [appellant] knew that night that he had to do in order to keep from going back to the penitentiary, a place that he knew well 'cause he'd been sent there in the '80s for murder, and he couldn't risk going back. He's under the gun.

\* \* \*

This case is about that. Why did [appellant] do it? He knows what the penitentiary is about. He knows he's facing a big hammer if convicted on that sex assault case.[7]

On direct appeal, the court of appeals decided that appellant's 1986 murder conviction was inadmissible to show appellant's motive for threatening Kirk. *See Pollard v. State*, 255 S.W.3d 184, 188-89 (Tex.App.–San Antonio 2008) ("The State's assertion that [appellant's] previous [murder] conviction, and resulting incarceration, motivated him to threaten Kirk with harm is mere speculation."). The court of appeals also decided that appellant's 1986 murder conviction was inadmissible as "background" evidence to show "that Kirk's fear of [appellant] caused him to vacillate in his accounts of what happened or did not happen regarding the sexual assault" because

---

[7]

The State did not argue that Kirk was "scared to death" of appellant because Kirk knew that appellant "had in the mid '80s killed a man."

"Kirk's state of mind is not an element of the offense of retaliation." *See Pollard*, 255 S.W.3d at 189. We granted the State's petition for discretionary review which presents the following ground:

> Because the victim's knowledge of a defendant's violent past can be relevant and was relevant in this case, the court of appeals erred by holding that evidence of the victim's state of mind is only relevant if it is an element of the offense.

The State asserts that it does not challenge the court of appeals' decision that appellant's 1986 murder conviction was inadmissible to prove appellant's motive for threatening Kirk. The State argues, however, that the court of appeals erred when it also decided that "what Appellant told Kirk about the murder" (for the purpose of showing Kirk's state of mind) was inadmissible. The State also argues that, if the evidence of "what Appellant told Kirk about the murder" was properly admitted, then this case should be remanded to the court of appeals to factor this into another harm analysis, specifically whether the erroneously admitted evidence of appellant's 1986 murder conviction "would have had more than a slight affect on the jury's verdict when the jury already knew that Appellant told Kirk he had killed someone." The State argues in its brief:

> The Court of Appeals held that evidence of Appellant's murder conviction was not relevant to prove that his motive in threatening Kirk was to avoid having to go back to prison. The Court of Appeals also rejected the State's alternative theory that what Appellant told Kirk about the murder was admissible to prove Kirk's state of mind. The Court of Appeals treated this as a single point of error and did not distinguish between admissibility of what Appellant told Kirk and admissibility of the murder conviction. We do not challenge the Court of Appeals' holding that the conviction was inadmissible to prove motive. Our petition addresses the relevance of evidence that Appellant told Kirk he had killed someone. These issues were intertwined at trial and on appeal, but can be separated.

> On original submission, the Court of Appeals believed it was error not only to admit the conviction, but also to admit testimony that Appellant told Kirk about the murder. Therefore, it factored this assumption into its harm analysis of the impact of the error on the verdict. If this Court agrees that what Appellant told Kirk was admissible and sustains our ground for review, the case should be remanded for the Court of Appeals to reconsider the issue of harm in [erroneously] admitting the conviction in light of

the fact that it was not error for the jury to be informed that Appellant told Kirk he had killed someone. The question in the harm analysis should now be whether, [the erroneous admission of] evidence that Appellant actually killed someone would have had more than a slight affect on the jury's verdict when the jury already knew that Appellant told Kirk he had killed someone.[8]

The first question that we must address is whether the ground upon which we granted review is properly before this Court, because arguably the court of appeals did not address the admissibility of "what Appellant told Kirk about the murder." *See* TEX. R. APP. PROC. 66.1 (this Court "may review a court of appeals' **decision**"). (Emphasis supplied). The question upon which we granted review is the relevance of the "victim's knowledge of [appellant's] violent past" (i.e, "what

---

[8]

The State's brief on discretionary review does not direct this Court where, in its direct-appeal brief in the court of appeals, the State presented the "alternative theory that **what Appellant told Kirk about the murder** was admissible to prove Kirk's state of mind." (Emphasis supplied). We have reviewed the State's direct-appeal brief in the court of appeals, and it does not support the State's assertion on discretionary review that the State's direct-appeal brief presented this alternative theory. The State's direct-appeal brief addressed the admissibility of appellant's 1986 murder conviction almost exclusively in the context of its motive theory. The alternative theory actually presented in the State's direct-appeal brief was that the 1986 murder conviction (and not "what Appellant told Kirk about the murder") was also admissible to show Kirk's state of mind. We set out the relevant portions of the State's direct-appeal brief:

> Additionally, the **evidence of the murder**, according to the State, and [**Kirk's] knowledge of that prior conviction** at the time the threat was issued, furnished a reason for [Kirk's] willingness to respond to the threat by retracting his statement implicating Appellant in various crimes.
> * * *
> The [extraneous 1986 murder conviction] offered showed Appellant's motive to make the threat against a witness who would put him back in the penitentiary. [The extraneous 1986 murder conviction] showed the context of the offense, demonstrating not only why the threat was made but also why Kirk vacillated, and made contradictory statements.

(Emphasis supplied); *see also Pollard*, 255 S.W.3d at 189 ("The State asserts defendant's [1986] murder conviction presents a background that helped the jury understand why Kirk contradicted himself in his statements for and against defendant.").

Appellant told Kirk about the murder"). The State presented this theory of admissibility to the trial court, which did not expressly rule on it even though appellant objected to it. The admissibility of the evidence of "what Appellant told Kirk about the murder" was not raised as a point of error in appellant's brief on direct appeal in the court of appeals.[9] And the court of appeals did not address this specific issue until it conducted its harm analysis of the erroneous admission of appellant's 1986 murder conviction. *See Pollard*, 255 S.W.3d at 190. One of the factors that the court of appeals relied upon in this harm analysis was that the State "elicited testimony from Kirk regarding his knowledge of [appellant's 1986 murder] conviction." *See id.*[10] We decide that this constitutes a decision that "what Appellant told Kirk about the murder" was inadmissible.[11] This, along with the court of appeals' decision that Kirk's state of mind was irrelevant, raises the issue presented by the State in its petition for discretionary review.

Appellant argues that Kirk's state of mind was irrelevant to the charged retaliation offense, especially since there is no evidence that appellant made any reference to his "violent past" in

---

[9] Appellant raised on appeal the admissibility of appellant's 1986 murder conviction which is distinct from "what Appellant told Kirk about the murder."

[10] The court of appeals' opinion states:

The State emphasized defendant's prior murder conviction repeatedly throughout trial. The State discussed the murder conviction in its opening statement to the jury; **it elicited testimony from Kirk regarding his knowledge of the conviction**, and it discussed the conviction again in its first closing argument to the jury.

*See Pollard*, 255 S.W.3d at 190 (emphasis supplied).

[11] We also agree with the State that, if evidence of "what Appellant told Kirk about the murder" was properly admitted and, if this evidence informed the jury that appellant had actually murdered a person, then this could have some bearing on the court of appeals' harm analysis.

connection with threatening Kirk by, for example, also saying to Kirk, "I've hurt/killed someone before, I'll do it again." Appellant argues in his brief:

> Kirk's state-of-mind is of no consequence to the charged offense of retaliation. First, the offense of retaliation does not require that the threat be taken seriously, nor is the complainant's subjective state-of-mind pertinent to the requisite elements of the charge. Second, in our case, there was no evidence or factual issue presented as to Kirk's actual fear or lack of fear of Appellant arising from Appellant's prior bad acts. Kirk did not testify that he was actually in fear of Appellant or took the threat seriously because of Appellant's history.

> Nor was there a shred of evidence that Appellant referenced or relied upon his history of violence to bolster the alleged threat. There was no evidence offered pertaining to Appellant's (sic) state-of-mind and his belief that the threat would be taken as legitimate due to the prior history of violence. For example, Appellant's comments such as "I've hurt/killed someone before, I'll do it again", are entirely absent from the record. Thus, the elements of the offense do not make such proof relevant, nor do the particular facts of this case make such proof relevant.

In a retaliation-by-threat case like this, when a threat ("retract your statement or I will hurt you") is accompanied by a statement ("I've killed before, and I'll do it again" or "You know I've killed before, and I will do it again"), a trial court would not abuse its discretion to decide that this latter accompanying statement is relevant. In these circumstances, a trial court could reasonably decide that the relevancy of the accompanying statement ("I've killed before, and I'll do it again" or "You know I've killed before, and I will do it again") is not the truth of the matter asserted in the statement, but the fact that the statement was made with the intent that the listener believed that the statement was true,[12] which makes it more probable that the defendant's threatening statement ("retract your statement or I will hurt you") was intended as a threat. *See* TEX. R. EVID.

---

[12] *See Teague v. State*, 864 S.W.2d 505, 519 (Tex.Cr.App. 1993) (out-of-court statement was "offered to prove the fact of an assertion, a nonhearsay purpose, and not to prove the truthfulness of the asserted fact, a hearsay purpose"), *overruled on other grounds by Robertson v. State*, 871 S.W.2d 701, 712-13 n.13 (Tex.Cr.App. 1993).

401("relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence).

This case does not present this scenario as there is no evidence that appellant's threat to Kirk was accompanied by any statement such as "I've killed before, and I'll do it again." The State nevertheless argues that it was also relevant that, at some time in the past before appellant even threatened Kirk, appellant told Kirk that he had killed a person. The State argues that this evidence was relevant to show that "Kirk took Appellant's threats seriously, which explains why he recanted his initial statements." The State also argues that this evidence was relevant to show that "when Appellant made the threat, he knew Kirk would believe he was capable of carrying it out, and Appellant intended that the combined effect of the threat and the knowledge of his violent past would prevent Kirk from reporting the crime and/or recanting the statements he had already made."

The State's brief is somewhat vague on whether the truth of the matter asserted in appellant's statement to Kirk that he had killed a person or whether the mere assertion itself (without regard to its truthfulness) was presented to the jury.[13] The State cites to the following portion of the record:

---

[13]

For example, the State also argues in its brief that "the fact that Appellant told Kirk he had murdered someone was relevant" and that "[w]hether the murder actually took place" was not relevant. This, however, seems very different from the claim actually presented in the State's ground for review that Kirk's knowledge of appellant's "violent past" was relevant. Permitting the jury to hear evidence that "Appellant told Kirk he had murdered someone" for the purpose of showing Kirk's fear of appellant is not the same as permitting the jury to hear evidence of appellant's "violent past" for this same purpose. The former does not necessarily inform the jury of appellant's "violent past" while the latter does.

This could have some bearing on a harm analysis of the erroneous admission of appellant's 1986 murder conviction. For example, if evidence that "Appellant told Kirk he had murdered someone" is admissible without informing the jury that a "murder actually took place," then it cannot be said, as the State suggests, that evidence of appellant's 1986 murder conviction could not have

Q. [STATE]: When did you first find out that [appellant] had killed a man?

A. [KIRK]: I can't remember the date.

Q. Well, I'm not asking you for the date. Can you kind of remember how it fits in there? Was it before the sex assault?

A. I believe it–I believe so.

Q. Okay.

[DEFENSE ATTORNEY 1]: Judge, just for--

[DEFENSE ATTORNEY 2]: Clay--

Q. And did you find out from the Defendant?

A. He had told me once.

After the parties and the trial court discussed the admissibility of this evidence, the trial court ruled that it was admissible and also instructed the jury not to consider this "extraneous offense" unless it found beyond a reasonable doubt that appellant committed it.

[TRIAL COURT]: I think it goes to–it goes to the basis for his fear of whether or not the Defendant was capable of carrying out the–carrying out the threat.

[DEFENSE]: Yes, sir. That–that was the Court's ruling yesterday. I just renewed my--

[TRIAL COURT]: Oh, okay.

[DEFENSE]: –that it's an extraneous–it is an extraneous offense, and I don't think there's an exception, so he–he needs to state an exception if he has one.

[STATE]: That, Your Honor, and the Defendant's motive to tamper with and retaliate against a witness to avoid the enhanced punishment and his return to prison.

\* \* \*

[TRIAL COURT]: Ladies and gentlemen, once again, you may hear evidence of

---

had more "than a slight affect on the jury's verdict when the jury already knew that Appellant told Kirk he had killed someone."

extraneous offenses that may have–may have been or may not have been committed by [appellant] and again I instruct you that unless you feel–believe beyond a reasonable doubt that he, in fact, committed those offenses, you cannot consider them for any reason in your deliberations.[14]

We do not believe that the record would support an assertion that Kirk testified that appellant merely told Kirk that he had killed a person. The question (concerning what appellant told Kirk) almost immediately followed the question "[w]hen did you find out that [appellant] had killed a man." Kirk's answer to these two questions informed the jury in no uncertain terms that Kirk learned from appellant that appellant had actually killed a person. The trial court's instruction to the jury immediately after this testimony not to consider this "extraneous offense" unless the jury believed that appellant committed it also appears to confirm that this evidence was offered to show that appellant had actually killed a person and not to show that he merely told Kirk that he had killed a person.

---

[14]

Kirk then testified that he was afraid that appellant would hurt him if he did not retract his statement:

Q. [STATE]: Okay. Mr. Kirk, did you have any fear what would happen to you if you turned against [appellant] and left him? Did you have any fears that something would happen to you?

A. [KIRK]: Yes, sir, if I–I had fears that if I made my statement and he knew about it, that he was going to hurt me. He was going to–you know, more likely get some other people after me too.

Q. Okay. Now, that's not something that you're guessing, is it?

A. No. I–I knew in my heart that he would do something.

Q. Is that what you were told by him would happen?

A. Yes, sir.

And we hold that the evidence that Kirk knew that appellant had actually killed a person was not relevant. Kirk did not testify that his knowledge that appellant had actually killed a person contributed to his fear of appellant or to his recantation of his initial statement implicating appellant in the sexual-assault case, making the evidence that appellant had actually killed a person somewhat free-wheeling and unconnected to anything of real consequence in the case. The evidence that appellant had actually killed a person, standing alone, did not make any fact of consequence more or less probable in this retaliation-by-threat prosecution. And, to the extent that this evidence of "what Appellant told Kirk about the murder" might have had some marginal relevance to any fact of consequence in this case beyond a character-conformity purpose or the State's now-abandoned purpose of showing motive, we do not believe that this would have affected the court of appeals' harm analysis on the erroneous admission of appellant's 1986 murder conviction. *See Pollard*, 255 S.W.3d at 190 (State emphasized the erroneously admitted evidence of appellant's 1986 murder conviction repeatedly throughout the trial).

The judgment of the court of appeals is affirmed.


Hervey, J.


Delivered: February 11, 2009
Publish