# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00549-CR

**Gerald D. Penson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 12,760, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Gerald D. Penson guilty of aggravated assault with a deadly weapon, reckless injury to a child, and retaliation, for which it assessed punishments of seven years and six months in prison, two years in state jail, and two years in prison, respectively. *See* Tex. Penal Code Ann. §§ 22.02, 22.04, 36.06 (West Supp. 2008). In three issues, appellant contends that the evidence is factually insufficient to sustain the convictions for injury to a child and retaliation, and that the trial court erred by refusing to instruct the jury on the defense of necessity. We will affirm the convictions.

The evidence shows that in August 2006, Jesusa Ybarra shared her residence in Elgin with three of her daughters, Monica Pierce, Isabel Pierce, and Jennifer Ybarra, four grandchildren, and appellant, who was Isabel's boyfriend. Jesusa testified that appellant and Isabel spent much of the evening of August 20 arguing over appellant's accusation, denied by Isabel, that Isabel had been

sleeping with other men.[1]  Later, after midnight, the subject of the argument changed.  Appellant began to demand that Isabel go with him to purchase gasoline for his car, but Isabel refused to do so. Walking away from appellant, Isabel went to Jesusa's bedroom and got in bed with Isabel's four-year-old daughter, Julissa Yepez, who was already sleeping there.  Jesusa also entered the bedroom, followed by appellant.

Jesusa testified that appellant began to scream at Isabel, cursing her and demanding that she get out of the bed and go with him.  Jesusa stood in front of appellant, urged calm, and threatened to call the police.  Jesusa testified, "When he comes closer to the bed I pick up the phone. I told him I was going to call the cops.  He told me, no.  And I had the receiver, he yanked the phone and it broke."  According to Jesusa, appellant then told her, "[I]f I even call the cops and they come to the house, if they arrested him that he was going to kill everybody in that house once he got out." Jesusa picked up a folding chair and ordered appellant to leave the house.  When appellant moved closer to the bed, Jesusa struck him on the back with the chair.

Jesusa's action had no effect on appellant.  She testified that appellant "lunged at Isabel" and began to hit her with his fists.  "[H]e just kept punching her and punching her in the face. So she grabbed the baby and she took the baby like this.  We kept telling him, stop, Gerald, she's got Julissa.  And he still kept hitting her and hitting her."  Isabel attempted to shield Julissa from appellant's blows by holding the child behind her.  Meanwhile, Jesusa, Monica, and Jennifer attempted to pull appellant away from Isabel without success.  Jesusa testified that she went to the living room and retrieved a small wooden bat, described in the record as a "souvenir bat," that she

---

[1]  For clarity, we will refer to the parties by their first names.

kept for protection. Jesusa then returned to the bedroom and struck appellant's back with the bat. Appellant turned away from Isabel and toward Jesusa, and he attempted to seize the bat. He and Jesusa struggled and fell. This temporarily ended the violence.

All the adults left the bedroom and went to the living room except for Isabel, who went to the front porch to smoke a cigarette. When Isabel started to reenter the house, appellant ran to the front door, pushed her back onto the porch, and hit her in the face. Isabel backed away from appellant, but her retreat was blocked by the porch railing. Appellant seized Isabel and threw her over the railing and onto the ground. Then he jumped over the railing and began to kick Isabel. Jesusa testified that Monica grabbed the wooden bat and went to Isabel's aid. Appellant took the bat from Monica and began to hit her with it. When Isabel stood and ran, appellant began to chase her on foot. At this point, the police were called.

Isabel, Monica, and Jennifer also testified, and their accounts of the incident corroborated Jesusa's. The State also introduced photographs showing the injuries to Isabel, Monica, and Julissa. The defense called no witnesses.

The indictment contained four counts accusing appellant of intentionally or knowingly threatening Isabel (count one) and Monica (count two) with imminent bodily injury by striking them with the bat, recklessly causing bodily injury to Julissa by striking her with his hand (count three),[2] and intentionally or knowingly threatening to murder Jesusa in retaliation for or on account of her status as a person who appellant knew intended to report the occurrence of a crime

_____

[2] The indictment alleged that appellant intentionally, knowingly, or recklessly injured the child, but at trial the State abandoned the first two culpable mental states.

3

(count four). The jury found appellant not guilty of the first count, but returned verdicts of guilty on the remaining counts.

In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson*, 23 S.W.3d at 11.

Appellant argues that the evidence is factually insufficient to support his conviction for injury to a child because none of the witnesses testified that they saw appellant hit Julissa, much less hit her with his fist. Appellant overlooks Jennifer's testimony describing the initial struggle in Jesusa's bedroom. Jennifer was asked by the prosecutor if she saw Julissa get hit. She answered, "Yeah. When Isabel was holding her, he [appellant] hit her." She added, "She [Julissa] got hit right here on her head (indicating)." Asked what appellant hit the child with, Jennifer answered, "It was his fist. He was hitting her with his fist." Jennifer added, "Isabel picked up Julissa because she was crying. When she picked up Julissa[,] Gerald went after her again and he was going like this, like

4

throwing his punches, but that's how he ended up hitting Julissa."  Jennifer identified State's exhibit 24 as a photograph of Julissa showing the knot on the child's head caused by appellant's blow.  Although the testimony of the other witnesses was not as detailed as Jennifer's, none of them testified that appellant did not strike and injure Julissa.  The jury's verdict convicting appellant of injury to a child is neither clearly wrong nor against the great weight of the evidence.  Issue two is overruled.

Appellant also contends that the evidence is factually insufficient to support his conviction for retaliation.  Jesusa testified that when appellant began to attack Isabel in the bedroom, she picked up the telephone and told him that she was going to call the police.  According to Jesusa, appellant snatched the telephone from her hands and threatened to kill "everybody in that house" if she called the police.  Appellant does not deny this, but he urges that this was not "an actual threat to do harm" but merely "a comment made during a heated argument."  He argues that Jesusa did not take the threat seriously, noting that when asked if she thought appellant's threat was "true," she answered, "In a way, yeah, because I know the way he was."  Section 36.06 does not, however, distinguish between "actual threats" and threats made "during a heated argument," nor is the threatened person's reaction an element of the offense.  *See Pollard v. State*, 255 S.W.3d 184, 189 (Tex. App.—San Antonio 2008), *aff'd*, No. PD-0363-08, 2009 Tex. Crim. App. LEXIS 233, at *22 (Tex. Crim. App. Feb. 11, 2009).  The jury's verdict convicting appellant of retaliation is neither clearly wrong nor against the great weight of the evidence.  Issue three is overruled.

Finally, appellant contends, with respect to his conviction for assaulting Monica, that the trial court erred by refusing to instruct the jury on the necessity defense.  Conduct is justified by

necessity if (1) the actor reasonably believed that his conduct was immediately necessary to avoid imminent harm, (2) the desirability and urgency of avoiding the harm clearly and reasonably outweighed the harm sought to be prevented by the law proscribing the actor's conduct, and (3) a legislative purpose to exclude the claimed justification does not otherwise plainly appear. Tex. Penal Code Ann. § 9.22 (West 2003).

A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of the trial court's opinion about the credibility of the defense. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex. App.—Austin 2005, no pet.). The record reflects that the trial court refused appellant's request for a necessity instruction because he did not testify. It is not necessary, however, for the defendant to testify in order to raise a defense. *VanBrackle*, 179 S.W.3d at 712; *Boget v. State*, 40 S.W.3d 624, 626 (Tex. App.—San Antonio 2001), *aff'd*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002). A defensive issue may be raised by the testimony of any witness, even a witness for the State. *VanBrackle*, 179 S.W.3d at 712. In deciding whether a defensive theory is raised, the evidence is viewed in the light most favorable to the defense. *Id*. at 713.

Monica testified that after appellant threw Isabel off the porch and began to kick her, "I [Monica] went after him to attack him because I had a bat and I was going to hit him with it. But when I got to him to hit him he grabbed the bat from me and he told me, no, you're not going to hit me, bitch. So he grabbed the bat and he hit me." Jesusa testified similarly. Appellant contends that this testimony raised an issue as to whether his striking Monica with the bat was justified by

6

necessity.[3] We disagree. Even if we assume that Monica's attempt to hit appellant with the bat was a threat of imminent harm within the meaning of section 9.22, the evidence shows that appellant ended that threat by taking the bat away from Monica before she could hit him with it. There is no evidence that Monica, after she was disarmed, represented a continuing threat of imminent harm to appellant so as to justify his attacking her with the bat. For this reason, the trial court did not err by refusing the necessity instruction. Issue one is overruled.

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: February 19, 2009

Do Not Publish

_____

[3] Appellant did not request a self-defense instruction and none was given.