Affirmed as Reformed and Memorandum
Opinion filed December 17, 2009.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00770-CR



George Oliver
McKnight, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 177th District Court

Harris County, Texas

Trial Court
Cause No. 1149919



 

MEMORANDUM OPINION 

Appellant George Oliver McKnight challenges his
conviction for robbery.  In two issues, appellant claims the trial court erred
in denying his motions to suppress a pretrial line-up identification and in
allowing an in-court identification because the complainant viewed photos of
appellant before identifying him in a line-up.  In a third issue, appellant
argues the trial court erred in admitting extraneous-offense evidence in
violation of Texas Rules of Evidence 403 and 404(b).  We reform the judgment as
requested in the State’s sole cross-point to reflect the jury’s affirmative
finding of appellant’s use of a deadly weapon in the commission of the robbery,
and we affirm the judgment as reformed.

I.  Factual and Procedural Background

A police officer arrived at a gas station in response
to a call about a robbery.  At the scene, the officer spoke with complainant
Keith Piatkowski.  Piatkowski explained to the officer that he had stopped at
the gas station that morning to fuel his truck.  Piatkowski was standing behind
the truck when he first noticed a man at a nearby bus stop.  Piatkowski saw the
man slowly walk towards his truck.  

The man was wearing a white t-shirt and blue jeans. 
Piatkowski described the man as a person of mixed Hispanic-Caucasian descent, who
was 25 to 30 years of age with an average build, and a height of 5’6” to 5’7”. 
Piatkowski guessed that the man weighed between 150 and 160 pounds.  According
to Piatkowski’s description, the man was clean shaven, had dark brown to black
hair, wore his hair short on the sides and one to two inches long on top, and
that his hair was a “little wavy.”  Piatkowski gave this description of the man
to a responding officer and later to an investigator.  

According to Piatkowski, the man made a “dash” to
open the truck’s door on the driver’s side.  Piatkowski attempted to meet the
man at the door.  The man brushed shoulders with Piatkowski, and the man
elbowed Piatkowski to keep him away.  Although the truck’s doors were closed,
the door was unlocked and the keys were inside.  Once inside the truck, the man
locked the doors.  Piatkowski stared at the man through the window and then walked
in front of the truck.  The man started the ignition and drove forward, hitting
Piatkowski.  Piatkowski rolled across the hood of the truck and grabbed the
mirror and then the side railing of the truck in an attempt to get into the
truck bed.  The man the driving the truck dragged Piatkowski for an undisclosed
distance before Piatkowski released his grip, and the man drove the truck from
the scene.  In Piatkowski’s mind, the ordeal lasted approximately three
minutes.

Several weeks later, the abandoned truck was located. 
Piatkoski went to retrieve the vehicle and met police officers at the
location.  The truck had sustained heavy damage with dents and graffiti. 
Officers took fingerprints from the truck before it was towed to a body shop
and ultimately released to Piatkowski.  

In January 2008, an investigator contacted Piatkowski
about the case.  Piatkowski gave the investigator a description of the man who
stole the truck.  Investigators had matched a fingerprint taken from the truck
to a woman named Kathy Respress.  The investigator determined that Piatkowski’s
description of the man at the gas station resembled appellant’s description.  Investigators
knew that appellant was a friend of Respress’s.  The investigator indicated
that she wanted to conduct a live line-up based on this information.  In their
conversation, the investigator learned that Piatkowski had cleaned out the
truck and found a notebook, a letter, and a disposable camera inside.  Piatkowski
had offered to develop the film from the camera; Piatkowski’s girlfriend had
the film processed the next day.  

When Piatkowski met with the investigator to view the
line-up, he gave the photos and other items taken from the truck to the
investigator.  Piatkowski acknowledged that he viewed the photos before he
arrived at the police station.  Several of the photos depicted appellant inside
the stolen truck; one of the photos depicted Respress inside the stolen truck. 
Piatkowski recognized the man in the photo as the person who stole the truck.  

The investigator conducted the line-up about one hour
later.  According to the investigator, appellant was permitted to select some
of the participants in the line-up and he determined the participants’
placement in the line-up.  From the line-up, Piatkowski identified appellant as
the person who stole the truck.  Piatkowski immediately recognized appellant in
the line-up and remained confident in his identification of appellant.  

Appellant was charged with robbery, to which he
pleaded “not guilty.”  He filed two motions.  In the first motion, appellant
challenged the identification procedure before the line-up, alleging that the
Houston Police Department exhibited a set of photographs to Piatkowski for the
purpose of identifying appellant.  In the second motion, appellant objected to
the admission of Piatkowski’s in-court identification of him, claiming that the
State had insufficient means to identify him and that any identification of him
was based on hearsay and an improper, suggestive “photographic line-up.”  The
trial court denied both motions.  

Following a trial on the merits, a jury found
appellant guilty as charged.  The jury also found that appellant used a deadly
weapon, a motor vehicle, in committing the offense.  After finding two
enhancement paragraphs to be true, the jury assessed appellant’s punishment at
thirty-two years’ confinement.  

II.  Issues and Analysis

A.   
Did the trial court err in denying appellant’s challenges to the pre-trial
identification and the in-court identification?

In two issues, appellant complains the trial court
erred in denying his challenges to Piatkowski’s pretrial identification and the
in-court identification.  According to appellant, the photographs Piatkowski
saw before the live line-up created an impermissibly suggestive identification procedure
and tainted his subsequent identification of appellant in the live line-up.  According
to appellant, the other participants in the line-up did not match the general
description of the robbery suspect, and Piatkowski did not view photos of these
other participants before identifying appellant in the line-up.  Appellant also challenges his in-court identification,
which he claims stemmed from Piatkowski’s viewing the photographs before the
live line-up and that Piatkowski did not have sufficient means to identify the
person who stole the truck.  

We review a trial court’s ruling on a motion to
suppress evidence under an abuse-of-discretion standard.  Long v. State,
823 S.W.2d 259, 277 (Tex. Crim. App. 1991).  We view the evidence adduced at a
suppression hearing in the light most favorable to the trial court’s ruling.  Champion
v. State, 919 S.W.2d 816, 818 (Tex. App.—Houston [14th Dist.] 1996, pet.
ref’d).  At a suppression hearing, the trial court is the sole finder of fact
and is free to believe or disbelieve any or all of the evidence presented.  Id. 
We give almost total deference to the trial court’s determination of historical
facts that depend on credibility and demeanor, but review de novo the trial
court’s application of the law to the facts if resolution of those ultimate
questions does not turn on the evaluation of credibility and demeanor.  See
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  

A pretrial identification procedure may be
suggestive, but that does not necessarily mean it is impermissibly so.  Barley
v. State, 906 S.W.2d 27, 34 (Tex. Crim. App. 1995).  Suggestiveness may be
implicated by the manner a pretrial identification procedure is conducted, as
in suggesting a suspect is included in the array, or when the suspect is the
only individual who closely resembles the pre-procedure description.  See id.
at 33.  A line-up is considered unduly suggestive if the appearance of other
participants is greatly dissimilar from the suspect.  Withers v. State,
902 S.W.2d 122, 125 (Tex. App.—Houston [1st Dist.] 1995, pet. ref’d).  A
suspect may be greatly dissimilar in appearance from the other participants based
on a distinctly different appearance, race, hair color, height, or age.  See
id.  However, minor discrepancies among line-up participants will not
render a line-up impermissibly suggestive.  See Partin v. State, 635
S.W.2d 923, 926 (Tex. App.—Fort Worth 1982, pet. ref’d).  The participants in a
line-up do not have to be identical to satisfy the requirements of due
process.  See Buxton v. State, 699 S.W.2d 212, 216 (Tex. Crim. App.
1985).  

Testimony from neither Piatkowski nor the investigator
who conducted the line-up supports an unduly suggestive procedure.  According
to the investigator who conducted the live line-up, the line-up was comprised
of five men wearing orange jumpsuits with similar hair color, age, height,
weight, and ethnicity.  According to the investigator, appellant selected the
men to participate in the live line-up and determined the participants’
positions.  The investigator advised Piatkowski that he should not feel
obligated to select a person from the line-up because the person who robbed him
may or may not be in the line-up.  A video of the live line-up, which was shown
at trial, confirms that the men were of similar age and build with dark hair
and the appearance of mixed ethnicity.  The video shows the men were of the
same approximate height, which varied only by one to two inches, and similar
weight.  Piatkowski similarly testified that the men in the line-up looked
similar and that each of the men in the line-up appeared to be of mixed
ethnicity.  The investigator testified that appellant was neither the tallest
nor shortest of the men in the line-up and that appellant’s weight similarly
fell in the middle of the participants’ weight range.  Although appellant
claims that Piatkowski’s pretrial identification was based upon his viewing of
photographs of appellant in the stolen truck, Piatkowski testified that his
pretrial identification of appellant was based solely upon the encounter with
appellant at the gas station and not on the photographs.  See Rojas v. State, 171 S.W.3d 442, 449 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d). 
We conclude the pretrial line-up procedure was not impermissibly
suggestive.  See Withers, 902 S.W.2d at 125 (providing that minor
discrepancies among the appearance of participants in a line-up will not render
a pretrial identification procedure unduly suggestive).

Even assuming arguendo that the
pretrial identification procedure was suggestive, the in-court identification
of appellant was still admissible.  An in-court identification is inadmissible if it has been tainted by an impermissibly suggestive pretrial
identification procedure.  Ibarra v. State, 11 S.W.3d 189, 195 (Tex.
Crim. App. 1999).  We consider, under the totality of circumstances, whether
the pretrial identification procedure was so impermissibly suggestive as to
give rise to a very substantial likelihood of irreparable misidentification.  Luna
v. State, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008).  Because
admissibility of identification testimony hinges on reliability, to warrant
exclusion of the in-court identification, appellant must have established by
clear and convincing evidence that the in-court identification was unreliable. 
See id.; Delk v. State, 855 S.W.2d 700, 706 (Tex. Crim. App.
1993); Santos v. State, 116 S.W.3d 447, 451, 455 (Tex. App.—Houston
[14th Dist.] 2003, pet. ref’d).  If the indicia of reliability outweigh the
influence of an impermissibly suggestive pretrial identification, in-court
identification testimony is admissible.  See Luna, 268 S.W.3d at 608;
Delk, 855 S.W.2d at 706.  In assessing reliability under the totality of
the circumstances, we weigh the following five factors against the corrupting
effect of any suggestive pretrial identification procedure:  (1) the witness’s
opportunity to view the criminal act, (2) the witness’s degree of attention,
(3) the accuracy of the suspect’s description, (4) the level of certainty at
the time of confrontation, and (5) the time between the crime and
confrontation.  Luna, 268 S.W.3d at 605; Ibarra, 11 S.W.3d at
195.  

The record reflects
that Piatkowski had sufficient opportunity to view the man who stole the
truck.  See Rojas, 171 S.W.3d at 449 (deeming a witness’s opportunity to
view the criminal act as sufficient).  He stared at the perpetrator for a
couple of minutes during the day-time encounter at the gas station; the men
were separated, at times, by only the window of the truck.  See id.  Piatkowski
testified that he had a good opportunity to view the perpetrator during the
encounter.  His description to responding officers at the scene and to
investigators nearly one month later accurately matched appellant’s appearance. 
See id.  Piatkowski recognized appellant immediately in the line-up, six
weeks after the encounter, and maintained his confidence in the
identification.  See Brown v. State, 29 S.W.3d 251, 256 (Tex.
App.—Houston [1st Dist.] 2000, no pet.) (providing that a two-month period
between offense and identification did not create a substantial likelihood of
misidentification).  Under the totality of the circumstances, there is nothing
to suggest a substantial likelihood of misidentification could have resulted from
the pretrial line-up.  See Rojas, 171 S.W.3d at 449.

Appellant claims that the
photographs Piatkowski saw before the live line-up subsequently induced Piatkowski’s
mistaken identification of appellant in the live line-up.  When identification is based upon knowledge
independent from the allegedly improper pretrial procedure, it is admissible.  See
id.; Brown, 29 S.W.3d at 256.  The record reflects that
Piatkowski denied that his identification of appellant resulted from his
viewing of the photos, and indicated that he identified appellant from his
encounter with appellant at the gas station.  Because
Piatkowski’s identification was made independent of the photographs and instead
was based on his recollection of seeing appellant during the offense, the
in-court identification was admissible.  See Rojas, 171 S.W.3d at 449.  Weighing this reliability against any suggestiveness of the pretrial identification
procedure leads us to conclude that there was no substantial likelihood of
irreparable misidentification.  See Luna, 268 S.W.3d at 608.  Therefore,
the in-court identification was not inadmissible.

We conclude the pretrial identification procedure was
not impermissibly suggestive, the in-court identification was made
independently, and there is no substantial likelihood of misidentification.  See
Rojas, 171 S.W.3d at 449.  Therefore, the trial court did not err in
denying appellant’s motions to suppress.  We overrule appellant’s first and
second issues.

B.     Did the
trial court err in admitting extraneous-offense evidence in violation of Texas
Rules of Evidence 403 and 404(b)?

In his third issue, appellant claims that the trial
court erred in admitting evidence of the photographs and a letter found inside
the truck, Respress’s name, Respress’s fingerprint, and testimony regarding
this evidence.  According to appellant, this evidence is extraneous-offense
evidence that was highly prejudicial and may have caused his conviction even
without the identification.

We review a trial court’s decision to admit or exclude
evidence under an abuse-of-discretion standard.  Mozon v. State, 991
S.W.2d 841, 847 (Tex. Crim. App. 1999); Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1990) (op. on reh’g).  Under this standard, we
reverse only if the ruling is outside the zone of reasonable disagreement.  Montgomery,
810 S.W.2d at 391. 

At a pretrial hearing, the trial court granted appellant’s
motion in limine to limit trial testimony regarding certain photographs and
conduct that could be considered extraneous-offense conduct.[1]  According
to this discussion, witnesses at the suppression hearing alluded to some photographs
and conduct that could have been considered extraneous-offense conduct.  The
State acknowledged that the investigator knew not to refer to appellant’s prior
arrest and that any of the photos mentioned during the hearing that implicated
extraneous-offense conduct would not be admitted into evidence at trial.  

Later, during the trial, the State sought to offer
several exhibits into evidence.  Exhibits 7 though 10 were photographs
developed from the camera found in the stolen truck.  These photos showed both
appellant and Respress inside the stolen truck.  Appellant objected to these
photos, asserting there had been a break in the chain of custody.  Appellant
did not challenge these photos on Rule 404(b) or Rule 403 grounds.  The trial
court admitted these exhibits.  Appellant does not show that any other photos
were presented at trial to which appellant asserted an objection under Rule 403
or Rule 404(b).  Therefore, appellant has failed to preserve this complaint for
review as to the photographs because his contention on appeal does not comport
with the objection he lodged at trial.  See Tex. R. App. P. 33.1(a); Wilson v. State, 71 S.W.3d
346, 349 (Tex. Crim. App. 2002).  An objection grounded on one legal basis in
the trial court may not be used to support a different legal theory on appeal. 
Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).  

Exhibit 11 was the letter found in the stolen truck. 
Appellant challenged admission of this exhibit into evidence because it allegedly
referred to extraneous-offense conduct.  The trial court withheld ruling on the
admissibility of the letter.  The letter was not admitted into evidence at
trial, and appellant has not shown that he obtained an adverse ruling on his
request to exclude this exhibit.  To preserve error for appellant review, the
complaining part must make a timely, specific objection and obtain an adverse
ruling on the objection.  See Tex.
R. App. P. 33.1(a).

The record reflects that outside of the jury’s
presence the parties discussed admitting testimony regarding fingerprints. 
According to this discussion, appellant’s fingerprints were not found in the
stolen truck, but Respress’s fingerprints were traced to the stolen truck.  Respress
and appellant were co-defendants in a case for auto theft in November 2007; the
facts alleged in that case are similar to the events in this case, which
occurred in December 2007.  The State agreed to exclude reference to the
extraneous offense and mention only that the fingerprint recovered from the
truck belonged to Respress, who was friends with appellant.  Appellant
preserved this complaint under Rules 403 and 404.  The trial court ruled that
the probative value of evidence of Respress’s fingerprint was not prejudicial
and outweighed any prejudicial effect. 

Rule 404(b) permits extraneous-offense evidence of
other crimes, wrongs, or acts if the evidence holds relevance apart from
proving that the defendant acted in conformity with bad character.  Tex.
R. Evid. 404(b); Moses v. State, 105 S.W.3d 622, 626 (Tex. Crim. App.
2003).  A trial court violates Rule 404(b) if, despite a
timely and specific objection, the court admits evidence of other crimes,
wrongs, or acts that is relevant to nothing except an attempt to show the
defendant acted in conformity with a bad character.  Montgomery, 810
S.W.2d at 386-87.  

The State, in offering evidence of Respress’s
fingerprint, did not offer any evidence of extraneous-offense conduct that
could be linked to appellant or Respress.  Throughout the investigator’s
testimony at trial, the State linked an affiliation between appellant and
Respress through the photos of Respress and appellant in the truck and her
fingerprint found in the truck.  The investigator testified that Respress’s
name was developed in the case as a witness and that appellant and Respress
were friends.  The jury did not hear any evidence of any extraneous-offense
conduct, and appellant has not pointed to any place in the record showing that
the evidence of extraneous-offense conduct was presented to the jury. 
Therefore, appellant’s reliance upon Rule 404 is misplaced on these facts, and
for this reason, the cases appellant cites are not applicable.[2]  

As to appellant’s complaint under Rule 403, appellant
has waived error on this complaint.  To present an issue for appellate review “the brief must contain a clear and concise argument for the contentions made,
with appropriate citations to authorities and to the record.”  Tex. R. App. P. 38.1(h).  Appellant
has not presented a single argument or citation in support of his argument
under Rule 403.  He has not addressed any of the governing legal principles or
applied them to the facts of this case. See King v. State, 17 S.W.3d 7,
23 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).  Appellant’s brief
contains a sentence that says, “The introduction of the letters photographs,
names of the co-defendant and his photo spread as well as [] Respress and her
print was highly prejudicial and tainted the trial to the extent that it could
have caused Appellant’s conviction even without the identification.”  However,
conclusory statements which contain no authority or citation present nothing
for appellate review.  Id.; see also Vuong v. State, 830 S.W.2d
929, 940 (Tex. Crim. App. 1992).  Therefore, appellant’s third issue is
overruled.

C.   
Should the trial court’s judgment be reformed to reflect the
jury’s affirmative finding that appellant used a deadly weapon in the
commission of the offense?

In the State’s sole cross-issue, it requests this
court to reform the trial court’s judgment to show that the jury made an
affirmative finding that appellant used a deadly weapon in the commission of
the offense.  The jury’s written verdict reflects the jury’s affirmative
finding that appellant used a deadly weapon, namely a motor vehicle, during the
commission of the offense, and the trial made an oral pronouncement in open
court to the same effect; however, the trial court’s judgment does not reflect
this finding.  Consequently, we find merit in the State’s cross-issue.  See
French v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); Cobb v.
State, 95 S.W.3d 664, 668 (Tex. App.—Houston [1st Dist.] 2002, no pet.). 
Accordingly, we reform the trial court’s judgment to reflect the jury’s
finding.

Having overruled all of appellant’s issues on appeal
and having sustained the State’s cross-issues seeking reformation of the
judgment, we affirm the trial court’s judgment as reformed.








                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

Panel consists of Justices Yates, Frost,
and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
It is unclear from the record at the hearing which photos and what conduct the
parties considered to be extraneous-offense conduct. 





[2]
See England v. State, 887 S.W.2d 902 (Tex. Crim. App. 1994) (involving
extraneous-offense evidence presented at trial that appellant sold narcotics
twice before the charged offense of delivery of narcotics); Pollard v. State,
255 S.W.3d 184 (Tex. App.—San Antonio 2008), aff’d, 277 S.W.3d 25 (Tex.
Crim. App. 2009) (involving extraneous-offense evidence of a murder presented to
the jury in a case for retaliation).