

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-12-00602-CR

Michael Jason **TUCKER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 12-03-0067-CRA
Honorable Stella Saxon, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice
Dissenting Opinion by:  Patricia O. Alvarez, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  October 8, 2014

As noted above, the trial court's failure to sua sponte include an extraneous offense instruction in the charge on punishment was error. *Huizar v. State*, 12 S.W.3d 479, 484–85 (Tex. Crim. App. 2000). However, because I would hold the trial court's failure to include the reasonable doubt instruction resulted in Tucker suffering egregious harm, I respectfully dissent from the court's judgment affirming Tucker's conviction.

### PUNISHMENT PHASE

I limit my discussion of the evidence to the extraneous offenses discussed during the punishment phase of the trial.

**A.      Extraneous Offenses in Question**

In addition to DT's testimony regarding additional uncharged sexual assaults offered during the guilt/innocence phase, the State also offered testimony regarding Tucker's possession of child pornography.  During the punishment phase, Sharla testified that in July of 2009 she witnessed approximately thirty or forty child pornography videos on Tucker's personal laptop computer.  When questioned, Sharla explained that she was satisfied by Tucker's explanation the videos were "accidentally downloaded" and did not pursue the matter further.  The laptop, however, was never offered before the jury as it had been previously destroyed.

**B.      Jury Instruction**

I agree with the majority's determination that after admitting (1) DT's testimony that Tucker assaulted her and (2) Sharla's testimony that Tucker viewed child pornography, the trial court was required to sua sponte charge the jury that they must believe the evidence beyond a reasonable doubt before using the extraneous offenses in their punishment deliberations.  *See Huizar*, 12 S.W.3d at 484–85.  Because the alleged error is a statutory violation and Tucker's counsel did not object to the charge, this court applies an egregious harm standard consistent with *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).  *See Huizar*, 12 S.W.3d at 484–85.

*1.      Establishing Egregious Harm*

Egregious harm is established if the record shows that the defendant has suffered "such harm that [his] trial was not fair or impartial."  *Almanza*, 686 S.W.2d at 171; *see Cosio v. State*, 353 S.W.3d 766, 776–77 (Tex. Crim. App. 2011).  Charge error is egregiously harmful when it affects "the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory."  *Fulcher v. State*, 274 S.W.3d 713, 716 (Tex. App.—San Antonio 2008, pet.

ref'd). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio*, 353 S.W.3d at 777; *Almanza*, 686 S.W.2d at 174. However, "[an appellate court does] not require direct evidence of harm to establish egregious harm." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

2.      *Tucker's Evidence of Egregious Harm*

a.      Arguments of the Parties

Tucker argues the testimony in question was highly inflammatory. Tucker first points to Sharla's testimony, which he contends was replete with vague, absurd, and seriously flawed allegations. As evidence of the egregious nature of the harm, Tucker asserts the jury was not required to believe Sharla's uncorroborated testimony that Tucker possessed pornographic videos including a video of an infant being raped.

Tucker also contends the record establishes the jury considered DT's testimony during their punishment deliberations and increased Tucker's sentence as a result. Compounding this error, Tucker argues the prosecution not only asked the jury, but "expected" the jury to consider DT as a third victim when assessing punishment.

The State counters that the instruction within the jury's charge in the guilt/innocence phase put them on notice that any extraneous evidence must be believed beyond a reasonable doubt. Relying on *Walker v. State*, 701 S.W.2d 316, 321 (Tex. App.—Austin 1985, pet. ref'd), the State concedes that although "it would be preferable for the trial court to have placed the same instruction in regards to extraneous evidence in both charges," failure to do so is not reversible error. Moreover, the State argues there is no evidence Tucker suffered harm as a result of the missing instruction.

####        b.         Determination of Harm

The introduction of extraneous offense evidence is "inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges not part of the present case against him." *Sims v. State*, 273 S.W.3d 291, 294–95 (Tex. Crim. App. 2008) (quoting *Pollard v. State*, 255 S.W.3d 184, 187–88 (Tex. App.—San Antonio 2008), *aff'd*, 277 S.W.3d 25 (Tex. Crim. App. 2009)); *accord Carter v. State*, 145 S.W.3d 702, 710 (Tex. App.—Dallas 2004, pet. ref'd). In addition, the jury is naturally inclined to infer guilt to the charged offense from the extraneous offense. *Carter*, 145 S.W.3d at 710; *Russell v. State*, 146 S.W.3d 705, 715 (Tex. App.—Texarkana 2004, no pet.). Thus, when no limiting instruction is given to lessen the prejudice from the extraneous offense evidence, "any prejudice resulting from introduction of the extraneous offense is unabated." *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994); *accord Ex Parte Varelas*, 45 S.W.3d 627, 633–34 (Tex. Crim. App. 2001).

In assessing whether Tucker was egregiously harmed by the omission of a reasonable doubt instruction in the punishment charge, an appellate court considers the following factors: (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of probative evidence; (3) the parties' arguments at voir dire and at trial; and (4) all other relevant information in the record. *Almanza*, 686 S.W.2d at 171. The *Almanza* analysis is fact specific and is done on a "case-by-case basis." *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).

####        (1)      Jury Charge

In the guilt/innocence phase, the trial court's charge included an instruction to the jury that any extraneous offenses had to be proved beyond a reasonable doubt. DT's testimony was direct and articulate. The jury could have reasonably believed the extraneous offense evidence beyond a reasonable doubt. *See generally Zarco v. State*, 210 S.W.3d 816, 824–26 (Tex. App.—Houston

[14th Dist.] 2006, no pet.). Accordingly, I agree this court cannot infer that the court's failure to include a beyond-a-reasonable-doubt instruction in the court's punishment charge changed how the jury considered the evidence pertaining to DT.

The testimony regarding child pornography, however, was not admitted during the guilt/innocence phase and the jury, therefore, never received an instruction that it must not consider the extraneous evidence unless it was proven beyond a reasonable doubt. Yet, the charge did instruct the jury that it must not take into consideration, refer to, or allude to Tucker's decision not to testify during the punishment phase. The charge also instructed the jury it was the exclusive judge of the facts proved, of the credibility of the witnesses, and of the weight to be given their testimony, but it was "bound to receive the law from the Court, which is herein given you, and be governed thereby."

Accordingly, I agree with the majority's determination that the admission of the pornography evidence, without an extraneous offense instruction, did not amount to egregious harm.

#### (2)      State of the Evidence

Although the testimony was not repeated during the punishment phase, DT's testimony regarding her father's sexual assaults was compelling. She testified to numerous assaults as well as her fear of telling anyone the truth. Sharla's testimony during the punishment phase was not extensive, however, her testimony regarding her discovery of multiple videos of men having sex with children on appellant's laptop computer is not behavior a jury would take lightly.

Even in light of the compelling nature of the testimony, I agree with the majority's determination that the trial court's determination to allow the admission of the evidence did not cause egregious harm.

(3)     Parties' Arguments at Voir Dire and Closing

During voir dire, the prosecutor told the jury that the burden never shifted to the defendant and the State had to prove its case beyond a reasonable doubt.  The defense asked the jury to keep an open mind about the possibility of children lying and the possibility of somebody putting a thought into a child's mind.  The record reveals nothing remarkable about the State's brief opening statements.  The defense began its opening with three words: "Jealousy, greed, revenge."  Counsel said "the seed" was planted when Sharla first did not believe Ka's initial outcry, and the jury would hear evidence about how Sharla used the children as leverage to get money in their pending divorce.  Counsel also told the jury Sharla realized Tucker did not have the money; instead, his mother had the money.

(A)     Closing Argument During the Guilt/Innocence Phase

In the State's closing argument during the guilt/innocence phase, the State explained to the jury why it heard from DT:

> Because where is the jealousy, greed and revenge that you heard about in opening statement?  If that is from Sharla then why in the world would that have anything to do with what he did to DT?  And that is why she was allowed to come in and tell you.  Because it's allowed to rebut his theory.  Because it's bull.  She isn't even close to [Ka and Ky].

In his closing argument, defense counsel reminded the jury that only Ky and Ka were mentioned in the indictment.  Counsel also reminded the jury it was not the defense's burden to show why Ky or Ka would lie, and if they did not believe the girls, then they could not convict simply because they believed DT.  Counsel said Sharla "was always about getting money from this family."  Counsel said the case against appellant relied entirely on the word of Ky and Ka, and "[Sharla] has a motive to coach."  Finally, defense counsel focused a significant portion of closing argument on DT and how the jury should not consider her testimony for the purpose of convicting appellant.

(B)      First Portion of State's Closing Argument

During its first punishment phase closing argument, the State began by telling the jury what it could consider.

> What's important for you [to] understand in punishment is that now things that you couldn't consider before you absolutely can consider. When you are determining what the appropriate amount of time that Michael Tucker deserves to spend in prison **you can consider what he did to all those girls** sitting over there, [DT], [Ka], [Ky], all three of them. Because you've heard from all three of them about the repeated things that he did over their lifespan.
>
> And you can consider all of that. **You can consider Sharla's testimony** to you about the child porn that he had on his computer before [Ky] outcried, all of that. You can talk about it all when you go back to figure out the rightful number of years. And we expect you to do that.

The prosecutor further relayed that Sharla did not want to believe what Tucker was capable of, and stated, "[a]s a mother I find that incredible, but it happened."

Because the prosecution only asked the jury to "consider" the extraneous offense testimony, I agree this argument did not cause Tucker egregious harm. *See McGowan v. State*, 729 S.W.2d 316, 318 (Tex. App.—Dallas 1987, no pet.) (requesting jury consider extraneous offense as a circumstance immediately surrounding the charged offense not error).

(C)      Defense Closing Argument

Defense counsel appealed to the jury by reminding them of testimony from a jailer about how individuals convicted of aggravated sexual assault of a child and indecency with a child are treated in prison, stating that five years "could be a death sentence in and of itself." Counsel said he was "okay" with the jurors believing the children, but he urged the jurors not to associate Sharla's testimony about the computer with assessing a higher punishment.

(D)     State's Final Closing Argument

After defense counsel closed, the State again argued:

> Whenever we get to this stage and whenever we're talking about what to do with someone, you know, we have to start thinking about, okay, well, what did we say he did, what did we convict him of.  You all convicted Michael Tucker of having sex with a nine-year-old.  That is the most heinous of all the crimes that we prosecute, outside of murder.  There is nothing worse than that.  There isn't.
>
> And so part of our punishment obviously is to punish.  ***You know, he has to be punished for what he's done, for the lives that he's ruined, for all of them, for [Ka] and [Ky] and [DT].***  Those are things they will never get back.  They will never get that back.  They will never have that innocence back.

It is a fundamental rule of law that a defendant "should not be assessed punishment for collateral crimes or for being a criminal generally, but is entitled to be punished upon the accusations in the indictment for which he has been found guilty."  *Klueppel v. State*, 505 S.W.2d 572, 574 (Tex. Crim. App. 1974); *accord Lomas v. State*, 707 S.W.2d 566, 568 (Tex. Crim. App. 1986) (requiring extraneous offense to be "inexorably connected" before seeking additional punishment); *McGowan*, 729 S.W.2d at 318 ("[A] defendant is entitled to be punished for only those accusations in the indictment for which he has been found guilty, the State is not entitled to ask the jury to assess punishment for collateral crimes that may have been admitted in evidence but were not alleged in the indictment.").  Here, the prosecutor asked the jury to do just that.

Tucker was indicted and found guilty for offenses against Ka and Ky.  The State instructed the jury to *punish* Tucker for ruining the lives of Ka, Ky, **and DT**.  By not only asking the jury to *consider* the extraneous offenses, but instead to affix Tucker's punishment based on the extraneous offenses, the prosecutor exceeded the bounds of proper jury argument.  *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a); *Klueppel*, 505 S.W.2d at 574.  *See also Carrera v. State*, No. 08-05-00264-CR, 2007 WL 766126, at *4 (Tex. App.—El Paso Mar. 15, 2007, no pet.) (not designated for publication) (holding request to consider the extraneous offense proper argument).  *But see*

*Sabedra v. State*, No. 05-03-01709-CR, 2005 WL 1155068, at *5–6 (Tex. App.—Dallas May 17, 2005, pet. dism'd) (not designated for publication) (concluding prosecutor exceeded permissible argument when seeking punishment for the abuse he inflicted on all four of the defendant's daughters when only one was alleged in the indictment); *Bennett v. State*, 677 S.W.2d 121, 123–24 (Tex. App.—Houston [14th Dist.] 1984, no pet.) (holding prosecutor exceeded permissible argument by requesting punishment for the four children contained in the indictment and a fifth child for which defendant was not convicted).

In light of the State's argument, and the lack of a limiting instruction within the charge, I would hold that Tucker suffered egregious harm and remand this matter for a new hearing on punishment. *Almanza*, 686 S.W.2d at 171. Accordingly, I respectfully dissent from the majority's determination that Tucker did not suffer egregious harm.

Patricia O. Alvarez, Justice

PUBLISH