**Gregory Earl POLLARD, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 04–06–00844–CR.**

Court of Appeals of Texas, San Antonio.

Jan. 30, 2008.

Discretionary Review Granted June 11, 2008.

Kurtis S. Rudkin Law Office of Kurtis S. Rudkin, Boerne, TX, for Appellant.

Amos L. Barton, Assistant District Attorney, Junction, TX, for Appellee.

Sitting: CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

A jury found defendant, Gregory Earl Pollard, guilty of retaliation by threat against a witness. The trial court sentenced defendant to twenty years' confinement. Defendant complains the trial court erred when it permitted the jury to hear evidence of his twenty-year-old murder conviction and other extraneous offenses. We reverse and remand for a new trial.

## BACKGROUND

Defendant was charged with retaliation against a witness by threatening to harm or kill Christopher Kirk. Kirk claimed defendant threatened to have him hurt or killed if he reported defendant's alleged sexual assault of a fourteen-year-old girl. Kirk eventually made four statements either to police investigators or defendant's attorney in which he either described or denied defendant's threats against him and the sexual assault of the girl. In his first statement, Kirk described defendant's sexual assault of the girl and accused defendant of threatening to harm or kill him if he told anyone about the assault. In his next two statements, he retracted his accusations. In his fourth statement, Kirk again accused defendant of the sexual assault against the girl and accused defendant of making a second threat against him.

At trial, Kirk explained his reasons for making the conflicting statements. Kirk testified he made the first statement to police several months after the sexual assault occurred when the victim's mother learned of the assault. When defendant again threatened him, Kirk made his second statement to defendant's attorney, retracting his accusations against defendant. His third statement, made to a police investigator, supported his statement to defendant's attorney. In his fourth and final statement, made after Kirk was jailed on charges that he sexually assaulted the twin sister of defendant's victim, Kirk again accused defendant of threatening him.

The jury heard testimony that defendant provided alcohol and narcotics to the girl and her twin sister on the day of the alleged sexual assault. Finally, the jury heard evidence that defendant had been convicted of murder in 1986, for which he served ten years' confinement. On appeal, defendant complains the trial court erred when it permitted the jury to hear evidence of the twenty-year-old murder conviction, his sexual assault of one of the girls, and that he provided alcohol and drugs to the girls. We will consider only whether the court erred in admitting defendant's prior murder conviction because defendant failed to preserve error as to the other extraneous offenses.

## STANDARD OF REVIEW

We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard to determine whether the decision was outside the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 378–79 (Tex. Crim.App.1990). We find error only where the decision falls outside the zone of reasonable disagreement, and it cannot be said that the decision falls outside that zone if it can be supported under any theory of law, regardless of whether the theory was raised at trial. *Lincicome v. State,* 3 S.W.3d 644, 649 (Tex.App.-Amarillo 1999, no pet.).

## ANALYSIS

Defendant complains the evidence of his 1986 murder conviction was inadmissible character evidence that served only to show he acted in conformity with his past record of bad or illegal conduct. Courts have long recognized the dangers inherent in the admission of evidence of an accused's character because "it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. U.S.,* 335 U.S. 469, 475–76, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Evidence of prior criminal conduct is inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges

not part of the present case against him. *See Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972). For this reason, the Court of Criminal Appeals has held "that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. The rule is now deemed axiomatic and is followed in all jurisdictions." *See Young v. State*, 159 Tex.Crim. 164, 261 S.W.2d 836, 837 (App. 1953); *see also Alexander v. State*, 740 S.W.2d 749, 762 n. 6 (Tex.Crim.App.1987).

That is not to say that character evidence is never admissible. If the evidence has relevance apart from character conformity, Texas Rule of Evidence 404(b) permits the evidence to be admitted. Evidence of extraneous offenses may be admitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex.R. Evid. 404(b). The exceptions listed in Rule 404(b) are illustrative, not exhaustive. *Montgomery*, 810 S.W.2d at 377. The circumstances that justify the admission of evidence of extraneous offenses are as varied as the cases and their factual contexts. *See Albrecht*, 486 S.W.2d at 100. Admission in each case must be determined on its own merits. *Id.* Here, the State contended defendant's prior conviction for murder was relevant to prove motive, or, alternatively, to prove Kirk had reason to believe defendant was capable or willing to act on his threat, which the State argues shows the context or perspective in which the charged crime must be viewed.

### 1. *Motive*

■■■■ Although proof of motive is not a required element in criminal cases, "evidence of motive is one kind of evidence [that aids in] establishing proof of an alleged offense." *See Crane v. State*, 786 S.W.2d 338, 349–50 (Tex.Crim.App.1990).

However, for evidence of motive to be admissible, the evidence must tend to raise an inference that the accused had a motive to commit the alleged offense for which he is on trial. *Bush v. State*, 628 S.W.2d 441, 444 (Tex.Crim.App.1982); *Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex.Crim.App. 1972).

The State asserts that because of defendant's prior murder conviction and resulting incarceration he would not want to go back to prison, and he therefore threatened Kirk in order to silence him and avoid returning to prison for the sexual assault. The State's reliance on *Gosch v. State*, 829 S.W.2d 775 (Tex.Crim.App.1991) and similar cases is misplaced because in each of those cases there existed evidence that linked the State's motive theory to the charged offense. *See id.* at 783 (evidence that defendant had urgent need for thousands of dollars to finance his flight to Belize and thus avoid appearing in federal court was admissible to show motive for extortion plot that ended in the complainant's murder); *see also Valdez v. State*, 776 S.W.2d 162, 168 (Tex.Crim.App.1989) (evidence that defendant knew he had an outstanding warrant for violating his federal parole by carrying a firearm was admissible to show motive for shooting police officer); *Barefoot v. State*, 596 S.W.2d 875, 886–87 (Tex.Crim.App.1980) (evidence that defendant was an escapee from New Mexico, where he was wanted for a variety of offenses, was admissible to show motive for killing a police officer).

Here, the State attempted to link the murder conviction to the charged offense by arguing that defendant threatened Kirk because defendant did not want to return to prison. However, the State presented no testimony or other evidence to support this theory. The State's assertion that defendant's previous conviction, and resulting incarceration, motivated him to threat-

en Kirk with harm is mere speculation. *See Rogers v. State*, 853 S.W.2d 29, 34 n. 8 (Tex.Crim.App.1993) (holding State's theory that defendant's use of methamphetamine was his motivation for committing burglary was speculative and without merit); *see also Couret v. State*, 792 S.W.2d 106, 108 (Tex.Crim.App.1990) (same). Accordingly, motive did not provide a basis for admitting the evidence.

### 2. Context

■ The State alternately asserts defendant's twenty-year-old murder conviction was admissible to explain the context for Kirk's belief that defendant was capable of or willing to kill or harm him. To determine whether contextual evidence is admissible, we first determine whether the evidence is directed at a consequential fact, thus making the evidence relevant under Rule 401. *Rogers*, 853 S.W.2d at 32; *see* Tex.R. Evid. 401. If the evidence in question is relevant, we next determine whether the evidence is admissible as an exception or "other purpose" under Rule 404(b). *Mayes v. State*, 816 S.W.2d at 86–87 (Tex.Crim.App.1991); *see* Tex.R. Evid. 404(b).

■ We will assume, without deciding, that the trial court did not err in determining that defendant's murder conviction was relevant to the jury's consideration of defendant's threatening Kirk. The question then becomes "for what purpose might [this] background evidence be admitted under Rule 404(b)." *Rogers*, 853 S.W.2d at 33. The Court of Criminal Appeals has distinguished between two types of contextual evidence: (1) "same transaction contextual evidence" and (2) "background" contextual evidence. *Mayes*, 816 S.W.2d at 86–87. When several crimes are intermixed or connected and testimony regarding one crime cannot be given without showing the other crimes, or it would be impracticable to do so, the evidence may be deemed admissible as "same transaction contextual evidence." *See id.* at 87 n. 4. On the other hand, character evidence offered simply because it is background evidence offered to help the jury understand the offense, but which otherwise conflicts with the proscription of Rule 404(b), is not admissible. *Id.* at 87. This is because when extraneous offenses are introduced as background evidence, "there is a real danger that they will be viewed by the jury as impermissible 'character evidence.'" HULEN D. WENDORF ET AL., TEXAS RULES OF EVIDENCE MANUAL 303 (7th ed.2005).

■ The State asserts defendant's murder conviction presents a background that helped the jury understand why Kirk contradicted himself in his statements for and against defendant.[1] More precisely, it was the State's theory that Kirk's fear of defendant caused him to vacillate in his accounts of what happened or did not happen regarding the sexual assault and the threats. However, Kirk's state of mind is not an element of the offense of retaliation. *See* TEX. PENAL CODE ANN. § 36.06 (Vernon 2006). Nor do we believe defendant's murder conviction or Kirk's state of mind helped the jury understand the offense of retaliation. *See Mayes*, 816 S.W.2d at 87. We conclude the evidence of defendant's murder conviction was inherently prejudicial and forced defendant to defend himself

---

1. The State does not contend the murder conviction constitutes "same transaction contextual evidence." We agree. Defendant's murder conviction, some twenty years prior, cannot be said to have been part of the same transaction, nor was evidence of the murder conviction so intermixed with evidence of the threat against Kirk that testimony about both was necessary. Therefore, evidence of the murder conviction was not admissible as "same transaction contextual evidence."

against charges not part of the case against him. *See Albrecht,* 486 S.W.2d at 100.

For these reasons, we conclude the trial court erred in admitting evidence of defendant's prior murder conviction.

## HARM

■■■■ Having found the trial court erred in admitting the twenty-year-old murder conviction, we must next determine whether the error was harmful. The Court of Criminal Appeals has instructed courts of appeals that, when conducting a harm analysis under Texas Rule of Appellate Procedure 44.2(b), "an appellate court need only determine whether or not the error affected a substantial right of the defendant. To make this determination, appellate courts must decide whether the error had a substantial or injurious effect on the jury verdict." *Llamas v. State,* 12 S.W.3d 469, 471 n. 2 (Tex.Crim.App.2000). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State,* 78 S.W.3d 352, 355 (Tex.Crim.App.2002).

■■■■ To assess the likelihood the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Id.* Overwhelming evidence of guilt is a factor in any thorough harm analysis. *Id.* at 357–58. However, if the error was of a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is

tainted. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). Evidence of a defendant's bad character traits possesses a devastating impact on a jury's rational disposition towards other evidence, and is poor evidence of guilt. *Mayes,* 816 S.W.2d at 86. Thus, we consider the extent the error was emphasized by the State, its probable collateral implications, the weight a juror would likely place on the error, and whether declaring it harmless would likely encourage the State to repeat the error with impunity. *Harris,* 790 S.W.2d.at 587. We focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making. *Id.*

The State emphasized defendant's prior murder conviction repeatedly throughout trial. The State discussed the murder conviction in its opening statement to the jury; it elicited testimony from Kirk regarding his knowledge of the conviction, and it discussed the conviction again in its first closing argument to the jury. During its opening statement, the State said:

> Let me add one more thing to that. Greg Pollard tells Chris Kirk, You better take this seriously, and Chris Kirk did because he had knowledge that Greg Pollard had in the mid '80s killed a man. Chris Kirk was scared to death.

During its closing argument, the State said:

> [Defendant]'s really under the gun in a couple of ways. One is he's looking at facing charges now because there's an eyewitness to at least part of it, sex[ual] assault of a fourteen-year-old girl. That's a serious deal. But he also knows this ain't his first rodeo. He knows when you go back there, you look at State's Exhibit 5, and then you'll know what Greg Pollard knew that night that he had to do in order to keep from

going back to the penitentiary, a place he knew well 'cause he'd been sent there in the '80s for murder, and he couldn't risk going back. So what's he do? He's already blabbed to Chris Kirk sitting there on the couch, and at some point, I take it, he realizes this ain't just guy talk. This is something serious.'

The State mentioned the murder conviction, not in passing as some unrelated past offense; but instead, as a direct link to the charged offense, *i.e.*, defendant threatened Kirk because defendant did not want to return to prison and the knowledge of the conviction frightened Kirk into believing the threat against him.

Further, the evidence of defendant's guilt was not overwhelming. The only evidence of defendant's threat against Kirk came from Kirk's testimony and two of his four statements. The other two statements were a retraction of Kirk's allegations against defendant. For these reasons, we conclude the State's emphasis of the murder conviction prejudiced the jury's decision-making, causing a substantial and injurious effect or influence on the jury's verdict, thereby affecting defendant's substantial rights.

## CONCLUSION

We reverse the judgment of the trial court and remand for a new trial.