*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# OPINION

No. 04-10-00120-CR

Joel **MAGAÑA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2009-CRN-000331-D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  August 10, 2011

REVERSED IN PART & REFORMED, AFFIRMED AS REFORMED

Appellant Joel Magaña appeals his convictions for the murder of Jose Rodriguez-Vidal, the robbery of Jose Rodriguez-Vidal, and the robbery of Abiel Rodriguez.  Magaña raises three issues on appeal: (1) the trial court committed harmful error by allowing the jury to convict him by a less-than-unanimous verdict of the felony murder charge; (2) his conviction for robbery of Rodriguez-Vidal should be vacated because it violates the Double Jeopardy Clause; and (3) the trial court committed harmful error by allowing the State to impeach Magaña with juvenile

adjudications.  We reverse Magaña's conviction for the robbery of Rodriguez-Vidal, and reform the judgment to delete his conviction and the punishment therefor.  We affirm the judgment as reformed.

## BACKGROUND

Around 3:00 am on January 20, 2009, Emilio Barron arrived at a friend's house where Joel Magaña was sleeping.  Barron woke him up so that they could "go do some jobs."  Magaña and Barron left the house and encountered Jose Rodriguez-Vidal and his son, Abiel Rodriguez, who were walking down the road.  Magaña approached Abiel and struck him on the side of his face.  Abiel saw Barron strike his father who then fell to the ground.  Abiel ran away toward a nearby gas station and Magaña chased after him.  Magaña caught up with Abiel, and Abiel gave Magaña all the money in his wallet.  Magaña then ran back to where he had last seen Barron, and Abiel then chased after him. When Abiel caught up with Magaña, he saw Barron and Magaña kicking his father.  Rodriguez-Vidal died from the injuries he incurred as a result of the attack.

Abiel explained what had happened to the police.  Officer De Hoyos patrolled the area for the men matching Abiel's description and arrested Magaña and Barron in the neighborhood about ten minutes later.  A grand jury indicted Magaña for the murder of Rodriguez-Vidal, robbery of Rodriguez-Vidal, and robbery of Abiel; Barron was indicted and tried separately. After a five-day trial, a jury convicted Magaña of all offenses charged.  The jury assessed a punishment of seventy-five years' imprisonment and a fine of $10,000.00 for murder, and ten years' imprisonment and a $10,000.00 fine for each robbery.  Magaña appeals.

## JURY CHARGE

Magaña's first issue is that the trial court committed harmful error by failing to include an application section in Count I for felony-murder for which robbery was the predicate felony. He contends that as a result, he was convicted of murder by a less-than-unanimous verdict.

### A. Applicable Law

Under the Texas Constitution and Texas Code of Criminal Procedure, a jury's verdict must be unanimous in all felony cases. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006); *accord* TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West 2006 & Supp. 2010). A jury must unanimously convict a defendant of a single, specific offense, but it need not unanimously agree as to any particular theory of how the defendant committed that offense. *See Stuhler v. State*, 218 S.W.3d 706, 716–19 (Tex. Crim. App. 2007); *Jefferson*, 189 S.W.3d at 312; *Sanchez v. State*, 182 S.W.3d 34, 63 (Tex. App.—San Antonio 2005), *aff'd*, 209 S.W.3d 117 (Tex. Crim. App. 2006). "In reviewing a disjunctive jury charge, we first determine whether the separate application paragraphs contain different criminal acts or whether they merely instruct as to different means of committing a single offense." *Holford v. State*, 177 S.W.3d 454, 461 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

In reviewing a claim of charge error, we first determine whether error exists. *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007); *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). A trial court must submit a jury charge accurately setting forth "the law applicable to the case." *Huffman v. State*, 234 S.W.3d 185, 198 (Tex. App.—San Antonio 2007), *aff'd on other grounds*, 267 S.W.3d 902 (Tex. Crim. App. 2008). If we find error, we "must then determine whether the error caused sufficient harm to require reversal." *Druery*, 225 S.W.3d at 504; *Hutch*, 922 S.W.2d at 170–71. "[T]he degree of harm necessary for reversal depends upon

whether the error was preserved." *Druery*, 225 S.W.3d at 504. If error is preserved, as in this case, "any harm, regardless of degree, is sufficient to require reversal." *Id.*; *see also Huffman*, 234 S.W.3d at 198.

## B. Analysis

Magaña argues that the jury charge enabled him to be convicted by a less-than-unanimous verdict because some of the jurors could have convicted him of murder based on the robbery of Rodriguez-Vidal and others could have convicted him based on the robbery of Abiel. However, "alternate pleading of the differing methods of committing one offense may be charged in one indictment." *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); *Mata v. State*, 75 S.W.3d 499, 501 (Tex. App.—San Antonio 2002), *rev'd on other grounds*, 122 S.W.3d 813 (Tex. Crim. App. 2003). If an indictment alleges multiple felonies as alternative bases for felony murder liability, the "felonies are not elements about which a jury must be unanimous" because "[t]hese felonies constitute the manner or means that make up the 'felony' element." *White v. State*, 208 S.W.3d 467, 469 (Tex. Crim. App. 2006); *see also Cameron v. State*, 988 S.W.2d 835, 849–50 (Tex. App.—San Antonio 1999, pet. ref'd). Moreover, the jury unanimously convicted Magaña for the robbery of Abiel and for the robbery of Rodriguez-Vidal.

He further contends that the jury instruction was improper because the robbery of Abiel could not be the predicate felony for the felony-murder of Rodriguez-Vidal because Abiel was a different victim. But the Court of Criminal Appeals has explained, "Nothing prohibits a single capital murder from containing alternate underlying offenses that are the same statutory offense but with different victims or different underlying methods of commission, so long as the same victim is alleged with respect to the predicate murder." *Davis v. State*, 313 S.W.3d 317, 342 (Tex. Crim. App. 2010).

Magaña lastly states that the evidence was insufficient to support that he robbed Rodriguez-Vidal because there was no evidence that Barron or Magaña had taken anything from Rodriguez-Vidal.[1]  Again, we disagree because "the actual commission of the offense of theft is not prerequisite to commission of a robbery," so long as it is "alleged and proven that the alleged offense was committed 'in the course of committing a theft' and 'with intent to obtain or maintain control of the property' involved in the theft." *Earl v. State*, 514 S.W.2d 273, 274 (Tex. Crim. App. 1974).  In this case, the jury was so instructed and the State presented evidence of Barron and Magaña's intent to take property from Rodriguez-Vidal.  Because there is no error in the jury charge, we overrule Magaña's first issue.  *See Druery*, 255 S.W.3d at 504; *Hutch*, 922 S.W.2d at 170–71.

### DOUBLE JEOPARDY

Magaña's second issue is that the conviction for the robbery of Rodriguez-Vidal contained in the trial court judgment violates the Double Jeopardy Clause because it is a lesser included offense of felony murder for which he was also convicted.  *See Littrell v. State*, 271 S.W.3d 273, 275 (Tex. Crim. App. 2008) (citing *Brown v. Ohio*, 432 U.S. 161, 164 (1977)).  The State agrees.  Accordingly, we reverse Magaña's conviction for the robbery of Rodriguez-Vidal and reform the judgment to delete that conviction and his sentence therefor.

### IMPROPER IMPEACHMENT

In his third and final issue, Magaña argues that the trial court erred by allowing the State to question Magaña about his prior juvenile adjudications.  During cross-examination, the State asked Magaña if he had any prior convictions and Magaña responded, "No."  When the State

---

[1] Although it appears from Magaña's brief that he complains of the inclusion of multiple theories of liability (e.g., principal, party, conspirator), counsel for Magaña at oral argument clarified that his sole position was that it was improper for the jury charge to not include an application paragraph regarding the proper predicate robbery, and that it was improper for the jury to convict Magaña of felony murder of Rodriguez-Vidal based on the robbery of Abiel.

asked Magaña about his prior juvenile adjudications, Magaña objected and the trial court overruled his objection. The State again asked Magaña about his prior juvenile adjudications and Magaña admitted to having a history of fighting in school. The State concedes that the trial court's ruling was erroneous, but argues that it was harmless error.

## A. Standard of Review

Both parties agree that the trial court's error is not constitutional. *See* TEX. R. APP. P. 44.2(b). A non-constitutional error must be disregarded unless it affects the substantial rights of the accused. *See id.*; *Pollard v. State*, 255 S.W.3d 184, 190 (Tex. App.—San Antonio 2008), *aff'd*, 277 S.W.3d 25 (Tex. Crim. App. 2009). "To make this determination, [we] must decide whether the error had a substantial or injurious effect on the jury verdict." *Pollard*, 255 S.W.3d at 190 (quoting *Llamas v. State*, 12 S.W.3d 469, 471 n.2 (Tex. Crim. App. 2000)). "Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury, or had but a slight effect." *Id.*

In assessing the degree of the impact of a non-constitutional error on the jury's verdict, we consider the entire record, including: (1) all physical evidence and testimony; (2) "the nature of the evidence supporting the verdict"; and (3) the nature of the error and how the erroneously admitted evidence "might be considered in connection with other evidence in the case." *Id.*; *see also Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). We may also consider: (4) the jury instructions; (5) the parties' respective theories and closing arguments; and (6) voir dire, if applicable. *Motilla*, 78 S.W.3d at 355–56. "Overwhelming evidence of guilt is a factor in any thorough harm analysis." *Pollard*, 255 S.W.3d at 190.

**B.  Analysis**

Based on the record as a whole, we have fair assurance that the error did not influence the jury.  Initially, the State offered substantial physical and testimonial evidence of Magaña's guilt.  Abiel testified that Magaña and Barron attacked him and Rodriguez-Vidal.  He also stated that Magaña then chased him to a nearby gas station where he gave all the money in his wallet to Magaña, who then stopped chasing him.  Abiel further testified that he then saw Magaña and Barron kicking Rodriguez-Vidal.  The State introduced a photo of the shoes Magaña was wearing that evening and offered testimony that the blood on those shoes matched Rodriguez-Vidal's blood.  Magaña's roommate, Raquel Carrasco, testified that earlier that evening, Barron sold to her several items he had stolen that same night and then woke up Magaña and told him, "Let's go do some jobs."  Magaña's testimony did not contradict much of the State's evidence, but he denied kicking or punching Rodriguez-Vidal and demanding any money from Abiel.

Although the trial court's error improperly permitted the State to impeach Magaña's credibility, the State impeached Magaña several other times.  Magaña admitted on cross-examination that he had changed his story at trial from what he had told investigators following his and Barron's attack on Abiel and Rodriguez-Vidal.  Magaña admitted that he had lied to investigators about where he had been that night, the nature of his friendship with Barron, and the money he took from Abiel.  After Magaña denied hitting Rodriguez-Vidal, the State impeached Magaña with a prior inconsistent statement in which Magaña had told investigators that he had hit Rodriguez-Vidal with both his hands and his feet.  Finally, the State did not rely on Magaña's school fights in its theory of the case or in closing argument.

Although the trial court abused its discretion by permitting the State to ask Magaña about his prior juvenile adjudications, this error was harmless. As such, we overrule Magaña's third and final issue.

## CONCLUSION

Based on the foregoing, we reverse Magaña's conviction for the robbery of Rodriguez-Vidal and reform the judgment to delete that conviction and the punishment therefor. We affirm the trial court's judgment as reformed.

Rebecca Simmons, Justice

PUBLISH