

# NUMBERS 13-18-00258-CR & 13-18-00259-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GEORGE ANDREW DAY,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

### On appeal from the 156th District Court
### of Bee County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Hinojosa

A jury convicted appellant George Andrew Day of aggravated assault with a deadly weapon on a family member, a second-degree felony, and felon in possession of a firearm, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 22.02(A)(2), 46.04(A). As a repeat felony offender, Day's sentence for the aggravated assault was enhanced to a

first-degree felony and he received a 35-year sentence in the Texas Department of Criminal Justice with a $10,000 fine. *See id*. § 12.42(b). For the felon in possession offense, the jury assessed a ten-year prison sentence with a $5,000 fine. The trial court ordered the sentences to run concurrently.

By five issues which we have re-ordered, Day asserts the trial court erred by admitting voicemail messages into evidence which were: (1) improper extraneous offense evidence; (2) more prejudicial than probative; and (3) improperly noticed. Day also claims that (4) there was insufficient evidence for the felon in possession offense and (5) the trial court improperly denied his request for a self-defense jury instruction. We affirm.

## I.     BACKGROUND

Day had an eighteen-year romantic relationship with the complainant in this case, Nicole Bialkowski. The couple had three sons. On August 31, 2017, Bialkowski testified that she returned home from her job as an elementary school teacher to find a suitcase of her children's clothing by the door of the couple's Corpus Christi home. Bialkowski claimed that Day threatened to strangle and kill her if she did not leave the house. Bialkowski quickly told her sons to pack their remaining possessions into garbage bags. Bialkowski also took her two guns before she left.

After staying in her car and in motels for about two weeks, Bialkowski and her sons moved into an apartment in Beeville, Texas, the city where she taught and where her children attended school. Between August 31 and September 8, 2017, Day made several attempts to communicate and/or locate Bialkowski and the children, but Bialkowski refused his calls. Day left a series of voicemail messages on Bialkowski's phone during

2

this time, which included messages like the following:

- "Well I hope it's worth it . . . I'm going to f–king break your f–king neck . . . You're not going to live . . . ."

- "Well, you leave me no f–king choice . . . . I'm gonna' come up there to your work tomorrow and I'm going to . . . pull your ass out of your f–king classroom."

- "The next time I see you, you're going to be f–king six feet deep."

- "I will come up there to your f–king work and I will yank your f–king ass out. You better f–king know that, motherf–ker.  Merry Christmas and Happy F–king New Year . . . ."

- "Now, you've pissed me off, okay? . . . Now, the next time I f–king see you I am gonna' . . . do . . . something that you don't want me to do."

- "You really f–king pissed me off, okay? You better call the police because I'm going to f–king break your f–king ass . . . ."

- "Okay, I know where to find you, so that being said, I'm going to come get you."

Bialkowski testified that she did not listen to these voicemails until after she moved into her new apartment on September 8, 2017. She also testified that she did not listen to all of them. After her boys were settled, she contacted Day. She took the children to visit their father on the weekends of September 8-10, 2017 and September 15-17, 2017. During the latter weekend, Bialkowski stayed with the children at their father's house in Corpus Christi; the record shows that she slept on the couch with her youngest son.

Bialkowski gave Day the address to her Beeville apartment, and he came to visit on Monday, September 18, 2017. He spent the night and left the next morning when the boys went to school. He returned on Tuesday, September 19. Bialkowski testified that she argued with Day about him staying in her apartment that day, but she eventually

3

relented. He spent the night again and left the next morning.

On Wednesday, September 20, 2017, Day returned to the Beeville apartment. This time, though, Bialkowski did not want to let him in. Day knocked and asked to see the children. He knocked louder and tried opening the door. He then started kicking it and yelling obscenities. Bialkowski retrieved her gun and called 9-1-1 to report that Day was trying to break into her apartment. She stood at her bedroom door with her gun aimed at the front door. She testified that her older sons were screaming hysterically and she told them to hide in the closet (her youngest son was asleep). Day then shot the lock on the door. Bialkowski thought it was a rock, but her oldest son told her he believed it was a gunshot. Day then kicked on the door until it busted open. He came in the apartment and Bialkowski rushed at him with her gun. Day was not brandishing a gun when he entered, but when he saw Bialkowski armed, he responded, "So you want to play it that way?" He reached behind his back and pulled out a gun.

As Day raised his gun over Bialkowski's head, she lowered her gun and used her hand to try to push Day's gun behind her back. Day's gun fired when she pushed it behind her. A single shot hit the couch and wall in the apartment. Bialkowski ran out of her apartment, with her oldest son following her. Police arrived and arrested Day.

## II. THE VOICEMAILS

### A. The Voicemails as Improper Extraneous Offense Evidence

By his first issue, Day claims that the trial court abused its discretion when it admitted the voicemails from August 31 and September 8, 2017 into evidence over objection. He claims it was improper extraneous offense evidence.

4

### 1. Standard of Review and Applicable Law

Texas Rule of Evidence 404(b) sets forth that an individual should be tried for his charged conduct rather than for his general bad character. *See Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (en banc). The rule, along with its exceptions, provides:

> (b) Crimes, Wrongs, or Other Acts
>
> (1) Prohibited Uses.  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses; Notice in Criminal Case.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intents to introduce such evidence—other than that arising in the same transaction—in its case in chief.

TEX. R. EVID. 404(b).

We review a trial court's admission or exclusion of evidence under an abuse of discretion standard. *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *See Montgomery*, 810 S.W.2d at 380. When considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.* at 391; *see also Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

In addition, we note that the court of criminal appeals has distinguished between two types of contextual evidence: (1) "same transaction" contextual evidence and (2)

5

"background" contextual evidence. *Pollard v. State*, 255 S.W.3d 184, 189 (Tex. App.— San Antonio 2008), *aff'd*, 277 S.W.3d 25 (Tex. Crim. App. 2009) (quoting *Mayes v. State*, 816 S.W.2d 79, 86–87 (Tex. Crim. App. 1991)). "Same transaction" contextual evidence is admissible when "several crimes are intermixed or connected and testimony regarding one crime cannot be given without showing the other crimes, or it would be impracticable to do so." *See id.* It is admissible "only to the extent that it is necessary to the jury's understanding of the offense." *McDonald v. State*, 179 S.W.3d 571, 577 (Tex. Crim. App. 2005).

On the other hand, "background" contextual evidence should not be admissible if it is offered simply as background evidence that helps the jury understand the offense, but which otherwise conflicts with the proscription of Rule 404(b). *Pollard*, 255 S.W.3d at 189. This is because when extraneous offenses are introduced as background evidence, "there is a real danger that they will be viewed by the jury as impermissible 'character evidence.'" *Id*.

### 2. Analysis

Here, Day argues that the trial court erred when it admitted the voicemails as "background" contextual evidence. We disagree. The voicemails were proper "same transaction" contextual evidence and demonstrated Day's intent to harm his ex-partner and the mother of his children, Bialkowski. Intent is a proper reason for admission under rule 404(b). *See* TEX. R. EVID. 404(b) (listing "intent" along with "motive, opportunity, . . . preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

Day counters that the voicemails were too attenuated from the date of the offense

to be relevant: Day left the voicemails between August 31 through September 8, 2017, and the underlying offense occurred on September 20, 2017. Again, we disagree. The voicemails, which occurred only weeks before the crime, demonstrated how Day intimidated Bialkowski over the phone. For example, Day stated he intended to "break [Bialkowski's] neck," that she was not "going to live," and that he would put her "six feet deep." The voicemails also gave context to why Bialkowski felt she had to retrieve a gun when Day began pounding her door, fearing Day intended to carry out his threats.

Day further argues that "none of the messages reference breaking down a door or shooting Bialkowski" and that "there is no reference to a gun at all." He claims, "there is nothing similar between [the] recorded messages and the September 20 altercation." This argument is unpersuasive. Day threatened her with serious bodily harm, and his kicking and shooting of the door knob relayed the meaning that his threats were not empty. In light of the foregoing, we conclude the trial court's decision to admit the voicemails as "same transaction" evidence was not outside the "zone of reasonable disagreement." *See Montgomery*, 810 S.W.2d at 380. We overrule this issue.

**B.      The Voicemails as Unfairly Prejudicial**

By his second issue, Day argues that the voicemails' probative value was substantially outweighed by their prejudicial effect. As a sub-matter to this issue, Day also claims the trial court did not properly conduct a balancing test under Texas Rule of Evidence 403.

**1.  Applicable Law**

Rule 403 provides as follows:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

*See* TEX. R. EVID. 403. The court can consider the following factors in a Rule 403 balancing test:

(1)     how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2)     the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

(3)     the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and

(4)     the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). Again, we review the trial court's admission or exclusion of evidence under Rule 403 under an abuse of discretion standard. *See Martinez*, 327 S.W.3d at 736.

### 2. Analysis

Day asserts that the trial court did not conduct a proper balancing test based on the following exchange, wherein the court admitted it had not listened to the voicemails in question:

DEFENSE:     Also[,] I will lodge an objection under 403 that it's [the admission of the voicemails] more prejudicial than probative to intent on the State.

8

COURT:	Well, *I haven't heard it*, so you know, that is a 403 objection. That is a different objection. (Emphasis added).

DEFENSE:	Yes, sir.

COURT:	I have to conduct a balancing test.

DEFENSE:	Yes, sir.

COURT:	But you haven't filed a 403 objection. You filed a 404 objection, so I'm going to overrule your objection at this time. If they have got audios of the communications between these parties that is not going to be uncontroverted that these are things that were said between these folks, then I don't have a problem with it.

	If you got the information or if he recorded or kept her communications with him, it's relevant and germane to coming to this, but what we're not going to be talking about is something that happened six months before that, nine months before that, two years ago or anything else.

STATE:	Right.

COURT:	It is going to be tied to the—relative to this case that is on trial, because as I understand 404(b) requests, it has to do with this crime, but the relationship of these parties leading up to this crime is—or alleged crime is, I find, part of the crime, and when you express an intent to hurt somebody and then show up at their house with a gun, I think the jury gets to hear about it.

DEFENSE:	And under 403 my objection is also overruled, Judge?

COURT:	Do you have a 403 motion?

DEFENSE:	I don't—I don't know that I have to file that in writing. I think you can—

COURT:	Then make your objection, but, again, I'm not in the middle of trial, counsel—how many pretrials have y'all had?

DEFENSE:	Two.

9

COURT: Then you had your chance to file your pretrial motions and not do this on the jury's time.

Overruled. These items only potentially do you get to get into at some other time other than the communications between these parties basically in the 60 days leading up to the event in question.

The record shows, however, that the trial court did in fact conduct a balancing test on the record. The court, although it shared its preference that the Rule 403 objection should have been urged in a pretrial motion instead of during trial, explained that communications between Day and Bialkowski sixty days prior to the offense in question were relevant to the question of intent. *See* TEX. R. EVID. 404(b). The court pronounced that, "when you express an intent to hurt somebody and then show up at their house with a gun, I think the jury gets to hear about it." Because the voicemails served "to make a fact of consequence more or less probable"—that Day intended to harm and then carried through with that objective—the trial court did not abuse its discretion in ruling that the voicemails were more probative than prejudicial. *See Santellan*, 939 S.W.2d at 169; TEX. R. EVID. 403. We overrule this issue.

## C.    Lack of Proper Notice

By his third issue, Day argues that the State failed to timely notify him that they would be using the voicemails. Rule 404(b)(2) provides that "on timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief." *Id*. R. 404(b)(2).

According to Day, the State filed a notice of extraneous conduct five days before

10

trial and the notice did not mention the voicemails at all. The State, on the other hand, contends that no notice was necessary because the voicemails were "arising in the same transaction." Because we held earlier that the voicemails "arose in the same transaction," we overrule this issue. *See id*.; *see also Pollard*, 255 S.W.3d at 189; *Mayes*, 816 S.W.2d at 86–87.

### III.   LEGAL SUFFICIENCY

Next, Day argues that there was insufficient evidence on two issues: (1) his prior conviction of involuntary manslaughter, which enhanced his punishment, and (2) that he was in possession of a weapon as a former felon.

### A. Applicable Law

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt. *See Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, (1979)). We consider all evidence in the record, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). We also consider direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Under this review, we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of

witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). To be entitled to a reversal of conviction on an insufficiency of the evidence claim, appellant must show that no rational jury could have found all of elements of the offense beyond a reasonable doubt. *Id.*

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Id.*

### B. Analysis

### 1. Day's Prior Conviction

In his first sub-issue, Day argues there was insufficient evidence to prove that he had previously been convicted of involuntary manslaughter, which enhanced his punishment range.

The record reflects that Day told Bialkowski he had previously committed involuntary manslaughter in "the late eighties" in "Corpus Christi, Texas." Bialkowski testified that Day shared he served five years for this offense in a Texas penitentiary. The State then offered State's Exhibit 20 into evidence, which was certified plea papers from Cause No. 89-CR-2479 out of the District Court for Nueces County, Texas, the *State of*

12

*Texas vs. George Day*, for involuntary manslaughter. Day's counsel objected, claiming there was improper foundation for the admission of the exhibit. Specifically, counsel claimed that there was no sponsoring witness to testify as to Day's fingerprints or identity. Bialkowski then verified Day's date of birth on the document and testified that the signature on the judgment was Day's signature. The court admitted the exhibit.

To prove a prior felony, the State must show beyond a reasonable doubt that: (1) a prior conviction exists and (2) the defendant is linked to that conviction. *See Flowers v. State*, 220 S.W.3d 919 (Tex. Crim. App. 2007). The State can prove this with "documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted." *Id*.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found that Day had previously been convicted of involuntary manslaughter. *See Gear*, 340 S.W.3d at 746; *Jackson*, 443 U.S. at 318–19. Bialkowski's testimony regarding her previous discussion with Day about the offense, as well as her confirmation of his signature and correct date of birth on the plea documents, support this conclusion.

## 2. Possession

In his second sub-issue, Day argues there was legally insufficient evidence to establish that he was a felon in possession of a firearm. Texas Penal Code § 46.04 provides that:

(a)      A person who has been convicted of a felony commits an offense if he possesses a firearm:

13

> (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or
>
> (2) after the period described by Subdivision (1), at any location other than the premises at which the person lives.

TEX. PENAL CODE ANN. § 46.04.

Day's argument focuses on the second prong of § 46.04—whether Day possessed a firearm "other than the premises" at which he lived. *See id*. Bialkowski testified that she arrived at her Corpus Christi home one day and saw her children's clothing in a suitcase. According to her, Day threatened to strangle and kill her if she did not leave the house. She and her children put their remaining belongings in garbage bags and left. Bialkowski's testimony revealed that she lived with her three sons in her car and in local motels for two weeks until she leased a new apartment in Beeville, Texas. Although the couple later coordinated visitations for the children, Day did not have a key to Bialkowski's new apartment. He spent the night there for two nights only, and the couple argued about whether Day would be welcome into the Bialkowski's apartment after the second night.

On the day of the underlying offense, Day pounded on, kicked, and ultimately shot the lock on the door because he did not have a key to the apartment and Bialkowski would not let him in. Although Day did not initially brandish a gun when he entered the apartment, he wielded it when Bialkowski approached him with hers. Day's gun fired into the couch and apartment wall when the couple struggled.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found that Day, a convicted felon, possessed a handgun at

14

a location other than the premises where he lived. *See Gear*, 340 S.W.3d at 746; *Jackson*, 443 U.S. at 318–19. Day did not "live" at Bialkowski's apartment as he forced Bialkowski from the family home in Corpus Christi, did not sign any documents to lease the new apartment in Beeville, did not have a key to the apartment premises, and only spent two nights there. *See generally Jones v. State,* 263 S.W. 586 (1924); *see also Luna v. State*, No. 05-93-00094-CR, 1994 WL 280247, at *4 (Tex. App.—Dallas June 23, 1994, no pet.) (mem. op.) (holding that if a defendant is permanently separated from his spouse, the residence of the spouse is not necessarily the defendant's "own premises" within the meaning of the statute). We overrule this issue.

## IV.    SELF DEFENSE JURY INSTRUCTION

By his fourth issue, Day argues the trial court erred when it failed to charge the jury with a self-defense instruction.

### A. Applicable Law

"A defendant is entitled to a jury instruction on self defense if the issue [of self defense] is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). "When reviewing a trial court's decision denying a request for a self defense instruction, we view the evidence in the light most favorable to the defendant's requested submission." *Id*. "A trial court errs in denying a self defense instruction if there is some evidence, from any source, when viewed in the light most favorable to the defendant, that will support the elements of self defense." *Id*.

15

However, "the use of force against another is not justified . . . if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was carrying a weapon in violation of section 46.02." TEX. PENAL CODE ANN. § 9.31(b)(5)(A). Section 46.02 provides that a person commits the offense of unlawful carrying of a weapon if the person intentionally, knowingly, or recklessly carries on his person a handgun and is not on the person's own premises or premises under the person's control." *See id*. § 46.02.

## B. Analysis

Day claims he was entitled to the self-defense charge because he did not wield his gun until he saw Bialkowski aiming her gun at him. The trial court denied Day's request and explained its position during the charge conference:

> I have wrestled with this issue over the evening hours as well as yesterday, and I just can't be the judge that is going to give the self-defense charge to somebody that has made the telephone calls [Day] made apparently, showed up at somebody's house, banged on the door, shot the doorknob, kicked the door down, and walked inside, and then was addressed by someone with a firearm and not shot himself. Having the right to defend himself after he has done those acts, if that is the law in Texas, I think I'm moving.

> So I'm not going to give that instruction to the jury, but your request is duly noted, and the 13th Court of Appeals or the Court of Criminal Appeals may get to tell me that I should leave.

We agree with the trial court. Having previously found that there was sufficient evidence to sustain Day's conviction for a felon in possession of a weapon offense, Day was not entitled a self-defense instruction when he arrived at an apartment where he did not reside with a gun. TEX. PENAL CODE ANN. § 9.31(b)(5)(A); *see also Luna*, 1994 WL 280247, at *4. We overrule this issue.

16

## V.    Conclusion

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
30th day of January, 2020.

17