

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00193-CR

ANTHONY GENE DUNN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. DC30-CR2024-0153

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

A Wichita County[1] jury found Appellant, Anthony Gene Dunn, guilty of possession of methamphetamine in an amount less than one gram, a state jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115(a)–(b) (Supp.). After finding both punishment-enhancement allegations true, the jury assessed a punishment of ten years' imprisonment. *See* TEX. PENAL CODE ANN. § 12.425(a). On appeal, Dunn argues that, (1) during the guilt/innocence phase, the trial court erred in admitting evidence of extraneous offenses and (2) during the punishment phase, his trial counsel was ineffective for failing to call witnesses. The State acknowledges in a cross-point that there is no evidence supporting enhancement because the alleged enhancements were not sentences of confinement, as is required for enhancement, but instead were suspended sentences. Because no error occurred in the admission of the extraneous offense, we affirm Dunn's conviction. We reverse and remand for a new punishment trial due to insufficient evidence supporting the enhancements.

## I.    Background

In December 2023, James Lindeman, an officer with the Wichita Falls Police Department (WFPD), initiated a traffic stop of a bicyclist riding in a roadway without a light affixed to his bicycle. *See* TEX. TRANSP. CODE ANN. § 551.104(b)(1), (2)(B). Lindeman determined that the bicyclist was Dunn and that Dunn had a pending arrest warrant. Lindeman arrested Dunn. During the search incident to arrest, Lindeman found a syringe containing a liquid that he

---

[1]This appeal was transferred to this Court from the Second Court of Appeals pursuant to a Texas Supreme Court docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). Accordingly, we apply the precedent of the Second Court of Appeals in deciding this case to the extent that it conflicts with our own. *See* TEX. R. APP. P. 41.3.

believed was methamphetamine.[2]  After finding the syringe, Lindeman said that Dunn became sad, looked down, and "started to hang his head."  After Dunn was placed in the patrol vehicle, Dunn said that this was going to ruin his career and leave him homeless.  Lindeman asked Dunn if the substance was methamphetamine, and Dunn said, "[Y]eah."  Officer Kyle Panter, with the WFPD, also found unused syringes in Dunn's backpack.

At trial, the jury found Dunn guilty of possession of methamphetamine in an amount less than one gram, a state jail felony.  After the punishment phase, the jury found Dunn had previously been convicted of two state jail felonies and assessed a punishment of ten years' imprisonment.

## II.     Admission of Extraneous Offenses

Dunn argues that, during the guilt/innocence phase, the trial court erred by admitting two extraneous offenses from a separate traffic stop in 2022, which Dunn contends should have been excluded under Rules 403 and 404(b).

In 2022, an officer attempted to pull Dunn over while he was driving a motorcycle.  Dunn fled, and the officer pursued him.  When the officer caught Dunn, he discovered methamphetamine in Dunn's jacket pocket.  Dunn told the officer about the methamphetamine when he began his pat-down.

In this case, the trial court admitted evidence of the 2022 convictions of evasion-of-arrest and possession, but it excluded evidence that the motorcycle had been stolen.  Dunn contends that the 2022 convictions were not admissible under Rule 404(b) and were more prejudicial than

---

[2]At trial, Danielle Weems, with the Texas Department of Public Safety (DPS) Crime Laboratory in Abilene, Texas, testified that the substance was .09 grams of methamphetamine.

probative under Rule 403. The State contends that evidence of the 2022 convictions was admissible to rebut Dunn's theory that, in his 2023 arrest, Dunn did not know that he had methamphetamine in his pocket.

Dunn did not urge a Rule 403 objection in the trial court. Therefore, we find that Dunn's argument on appeal is unpreserved. *See Wood v. State*, 693 S.W.3d 308, 323 (Tex. Crim. App. 2024). Accordingly, we will only address Dunn's Rule 404(b) extraneous-offense argument.

### A. Standard of Review

"[A] trial court's ruling on the admissibility of extraneous offenses is reviewed [for] an abuse-of-discretion." *Irsan v. State*, 708 S.W.3d 584, 622 (Tex. Crim. App. 2025) (quoting *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009)). An appellate court must uphold a trial court's ruling if the record reasonably supports it and is correct under any theory of law applicable to the case. *See id.* "An appellate court will not reverse a trial court's ruling [to admit evidence] unless that ruling falls outside the zone of reasonable disagreement." *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). The Texas Court of Criminal Appeals has explained,

> A trial court's ruling is generally within th[e] zone if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling.

*De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) (footnote omitted) (citation omitted).

4

All relevant evidence is admissible unless it is excluded by law. TEX. R. EVID. 402. "Evidence is relevant if . . . it has any tendency to make" the existence of any "fact [that] is of consequence in determining the action" "more or less probable than it would be without the evidence." TEX. R. EVID. 401.

Under Rule 404(b), "evidence of other crimes, wrongs, or acts is not admissible 'to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *Davison v. State*, 602 S.W.3d 625, 651 (Tex. App.—Texarkana 2020, pet. ref'd) (quoting TEX. R. EVID. 404(b)(1)). "But it may 'be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, . . . absence of mistake, or lack of accident.'" *Id.* (quoting TEX. R. EVID. 404(b)(2)). "The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343). "Rule 404(b) is a rule of inclusion rather than exclusion." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343).

Further, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." TEX. R. EVID. 404(a)(1). However,

> [t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief.

TEX. R. EVID. 404(b)(2); *see Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). "The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343.

But, when a defendant raises a defensive theory, he "opens the door" for the State to offer rebuttal evidence regarding an extraneous offense if the extraneous offense has characteristics common with the offense for which the defendant was on trial. *Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016). Simply stated, "[a]s a general proposition, when a party introduces matters into evidence, he invites the other side to reply to that evidence." *Wheeler v. State*, 67 S.W.3d 879, 885 n.13 (Tex. Crim. App. 2022) (citing *Kincaid v. State*, 534 S.W.2d 340, 342 (Tex. Crim. App. 1976)).

### B. Preservation of Error

This issue may not have been preserved for appeal. *See* TEX. R. APP. P. 33.1. Although Dunn objected in a hearing outside the jury that the extraneous offenses should not be admitted, *see Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991), the State admitted the dash- and body-camera footage of both the evading with a vehicle and possession extraneous offenses. *See Mitchell v. State*, 68 S.W.3d 640, 643 (Tex. Crim. App. 2002). Even though Dunn was not required to object to the testimony, the dash- and body-camera footage was separate evidence that was not addressed during the hearing outside of the jury, and Dunn did not request a running objection. *See Ethington*, 819 S.W.2d at 858.

For purposes of this appeal, we will assume without deciding that Dunn's complaints have been preserved.

6

**C.** **Analysis**

Dunn argues that the trial court erred in admitting two prior unadjudicated extraneous offenses: (1) possession of methamphetamine and (2) evading arrest or detention with a vehicle. Both incidents occurred during the same prior episode, approximately one year before the charged offense. The trial court, however, excluded a contemporaneous unauthorized use of a motor vehicle (i.e., the motorcycle in the 2022 incident was stolen).

**1.** **Extraneous Possession**

**a.** **The State Opened the Door to the Introduction of Extraneous Offenses**

A "defensive theory raised in voir dire and opening statements open[s] the door to . . . extraneous-offense evidence presented by the State and the State [i]s not required under Rule 404(b) to provide notice of such rebuttal evidence." *Dabney*, 492 S.W.3d at 318.

Throughout the trial, from jury selection through closing arguments, Dunn maintained a defensive theory of unknowing possession. During jury selection, Dunn presented hypothetical scenarios illustrating unknowing possession: possessing a stolen pencil without knowledge it was stolen; a wife unknowingly possessing a knife at a concert while wearing her husband's jacket; and possession of marihuana in a borrowed purse. During opening statements, Dunn stated that he did not know the methamphetamine was in his pocket. He cross-examined Lindeman and others witnesses about whether Dunn knew the syringe was in his pocket and asked questions related to ownership versus possession. That established Dunn's defensive theory and allowed the State to introduce extraneous offenses to provide the jury with a full and accurate picture.

7

### b.     The Extraneous Possession Was Relevant to Prove Intent and Knowledge

The extraneous possession offense arose from a traffic stop in 2022 conducted by Brandon Ward, a trooper with the DPS.  The stop was initiated due to a motorcycle emitting an illegal light.  After Ward attempted to stop the vehicle, Dunn fled and subsequently "crashed out."  Following Dunn's arrest, Ward found methamphetamine and a needle in Dunn's pants pocket.  Dunn told the officer about the methamphetamine when he began his pat down.  Sarah McGregor, with the DPS Crime Laboratory in Abilene, Texas, testified that the substance Ward found was 0.35 grams of methamphetamine HCL.

"When the defendant's intent to commit the offense charged is at issue, the relevance of an extraneous offense derives from the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all."  *Brown v. State*, 96 S.W.3d 508, 512 (Tex. App.—Austin 2002, no pet.); *see Dabney*, 492 S.W.3d at 317 ("[T]he 'doctrine of chances' tells us that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance," and that defense can become "less believable" when defendant has made the same unlikely claim multiple times.).  When a defendant claims he did not knowingly possess contraband, evidence of similar prior drug offenses becomes relevant to prove knowledge and intent and to rebut claims of mistake or accident.  In *Gauch v. State*, the Fort Worth Court of Appeals stated, "Gauch's defensive theory at trial was that he did not know about and did not possess the methamphetamine pipe found between the driver's seat and the center console of his car."  *Gauch v. State*, No. 02-18-00454-CR, 2019 WL 4010347, at *2 (Tex.

8

App.—Fort Worth Aug. 26, 2019, no pet.) (mem. op., not designated for publication). The prior extraneous conviction for possession of methamphetamine with the intent to deliver was relevant "because it made the elemental facts of intent and knowledge more or less probable and tended to refute Gauch's defensive theory." *Id.*; *see also Rogers v. State*, No. 06-23-00054-CR, 2023 WL 7554328, at *5–6 (Tex. App.—Texarkana Nov. 15, 2023, no pet.) (mem. op., not designated for publication) ("[T]he State was allowed to offer evidence in the form of the two extraneous offenses to rebut [his] defensive theory" and to prove his knowing possession of the drugs.).

### 2. Extraneous Possession Was Similar

"For the doctrine [of chances] to apply, there must be a similarity between the charged and extraneous offenses, since it is the improbability of a like result being repeated by mere chance that gives the extraneous offense probative weight." *Brown*, 96 S.W.3d at 512. "The degree of similarity required, however, is not as great when intent is the material issue as when identity is the material issue and the extraneous offense is offered to prove *modus operandi*." *Id.* at 512–13.

The extraneous possession offense shared significant similarities with the charged offense. *See Plante v. State*, 692 S.W.2d 487, 493 (Tex. Crim. App. 1985) ("[S]uch a high degree of similarity is not required when the purpose of the proof is to show intent."). In both, Dunn possessed small amounts of methamphetamine on or near his person. Those commonalities corroborated the witness's testimony in the offense at issue.

Ward initially attempted to stop the motorcycle for a citation. Ward arrested Dunn for the evading with a vehicle offense, and, during the search incident to that arrest, Dunn admitted

that he had a needle and a vial of methamphetamine in his right front pants pocket. The prior extraneous possession offense strengthened the fact that Dunn had knowledge of the possession at issue. *See Carter v. State*, 145 S.W.3d 702, 708 (Tex. App.—Dallas 2004, pet. ref'd) ("Evidence of extraneous offenses may be admissible to prove scienter, but only where intent or guilty knowledge is an essential element of the State's case and cannot be inferred from the act itself.").

Therefore, the trial court did not abuse its discretion in admitting the extraneous possession offense.

### 3. Extraneous Evading with a Vehicle

Assuming, but not deciding, that the trial court did abuse its discretion in admitting the extraneous evading arrest or detention with a vehicle, any potential error was harmless. Error in admitting evidence concerning extraneous offenses is reviewed under the standard for nonconstitutional error contained in Rule 44.2(b). *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007) (finding, under Rule 44.2(b), error in admitting photographs was harmless). Rule 44.2(b) provides that an appellate court must disregard a nonconstitutional error "that does not affect" a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). An error affects a substantial right of the defendant "when the error ha[s] a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Reversible error has not occurred "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect."

10

*Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

The Texas Court of Criminal Appeals has instructed:

> In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court might also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments and even voir dire, if material to appellant's claim.

*Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *see Motilla*, 78 S.W.3d at 355–57 ("overwhelming evidence of guilt" can be a factor).

First, the character of the erroneously admitted evidence weighs in favor of a finding of harm. "Extraneous-offense evidence is 'inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges not part of the present case against him.'" *Sims v. State*, 273 S.W.3d 291, 294–95 (Tex. Crim. App. 2008) (quoting *Pollard v. State*, 255 S.W.3d 184, 187–88 (Tex. App.—San Antonio 2008), *aff'd*, 277 S.W.3d 25 (Tex. Crim. App. 2009)). "By its very nature, an improperly admitted extraneous offense tends to be harmful. It encourages a jury to base its decisions on character conformity, rather than evidence that the defendant committed the offense with which he or she has been charged." *Jackson v. State*, 320 S.W.3d 873, 889 (Tex. App.—Texarkana 2010, pet. ref'd). This factor favors a finding of harm.

The remaining factors, however, favor a finding the error did not result in harm. The evidence for both offenses was overwhelming because Dunn confessed to possession of a controlled substance in the extraneous offenses, as in this case. Neither offense had weak

11

evidence or credibility issues, neither had "enormous potential for confusing the jury and enormous potential to encourage the jury to base its decision on character conformity," *id.*, and the evidence for each offense was "free from contradictions," *id.* at 890.

The State's emphasis of the extraneous evading was minimal. *See id.* ("In considering how the erroneously admitted evidence might be considered in connection with other evidence in the case, the emphasis of the evidence by the State should be considered."). Even though the jury watched the dash-camera footage of the extraneous evading, the State focused on the extraneous possession to show that Dunn had intent and knowledge of the methamphetamine in this case. Ward's testimony of the extraneous evading consisted of approximately three pages out of approximately 120 pages of testimony presented during guilt/innocence.

Finally, the trial court correctly instructed the jury that the extraneous offense must be proven beyond a reasonable doubt, instructing it:

> The State has introduced evidence that the defendant may have committed wrongful acts not charged in the indictment. This evidence was admitted only for the purpose of showing the defendant's motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident, if any. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the Defendant committed these acts, if any were committed.

> Even if you do find that the defendant committed a wrongful act, you may consider this evidence only for the limited purpose I have described. You may not consider this evidence to prove that the defendant is a bad person and for this reason was likely to commit the charged offense. In other words, you should consider this evidence only for the specific, limited purpose I have described. To consider this evidence for any other purpose would be improper.

"Instructions to the jury are generally considered sufficient to cure improprieties that occur during trial," and appellate courts "generally presume that a jury will follow the judge's

12

instructions." *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). The trial court's instructions serve to mitigate any harm that might have resulted from the error in admitting Ward's testimony. The jury was instructed that the extraneous offense must have been established beyond a reasonable doubt, and we will presume the jury followed that instruction.

After reviewing the entire record, we have a fair assurance that the error did not influence the jury or had merely a slight effect. We conclude that any error in the admission of the extraneous offense of evading with a vehicle did not result in any harm to Dunn's substantial rights.

Therefore, we overrule Dunn's point of error.

## III. Trial Counsel Was Not Ineffective During Punishment Phase

Dunn argues that his trial counsel was ineffective for failing to call witnesses during the punishment phase.

### A. Standard of Review and Applicable Law

The Sixth Amendment to the United States Constitution guarantees an accused the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez*, 343 S.W.3d at 143.

The right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). To show that trial counsel was ineffective, Dunn must demonstrate that (1) trial counsel's performance was deficient because it "fell below an objective

13

standard of reasonableness" and (2) "a probability sufficient to undermine confidence in the outcome" existed that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A reasonable probability [means] a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A failure to make a showing under either prong of the *Strickland* test defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). "The record on direct appeal is generally insufficient to show that counsel's performance was deficient." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). The *Strickland* test "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 382 (2000) (quoting *Wright v. West*, 505 U.S. 277, 308 (1992) (Kennedy, J., concurring in judgment)). We "must look to the totality of the representation, and [our] decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias." *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (orig. proceeding) (citing *Strickland*, 466 U.S. at 690). "If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013) (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)).

We apply a strong presumption that trial counsel was competent and presume that counsel's actions and decisions were reasonably professional and motivated by sound trial

strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Also, when an appellate record is silent on why trial counsel failed to take certain actions, "the appellant has failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson*, 9 S.W.3d at 814.

**B.      Dunn Failed to Meet His Burden of Showing Counsel's Performance Was Deficient**

Dunn argues generally that trial counsel was ineffective for failing to call witnesses during the punishment phase. Dunn only claims that "[c]ounsel for Defendant had previously spoken to punishment witnesses for the Defendant in preparation for calling them as witnesses at the punishment phase of the trial." Dunn failed to meet his burden to show ineffective assistance.

*Strickland* does not "require defense counsel to present mitigating evidence at sentencing in every case." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003). "To obtain relief on an ineffective assistance of counsel claim based on an uncalled witness, the applicant must show that [the witness] had been available to testify and that his testimony would have been of some benefit to the defense." *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004) (orig. proceeding). Dunn did not provide any evidence showing that any potential witnesses were available and would have benefited him. The record reflects some of trial counsel's reasoning, but that reasoning does not include all the relevant details. At trial, trial counsel stated:

> Judge, I just wanted to put on the record that I had spoken with Mr. Dunn. That was obviously yesterday [when Dunn was present for the trial]. We were talking about punishment witnesses, and I met a couple of them. And we sent our

15

investigator out to make contact and bring them in. However, at this time, I believe it makes more sense to possibly not bring them in because of the circumstances . . . . We won't be bringing, obviously, any of those character witnesses in at this time.

That limited record suggests counsel strategically decided not to call witnesses based on specific circumstances—i.e., Dunn failing to return to trial. The record does not reflect whether any witnesses were available to testify or what testimony they might have offered. Without this crucial information, we cannot determine that their testimony would have benefited Dunn. Even so, trial counsel may have reasonably concluded that calling character witnesses for a defendant who failed to appear in court would damage rather than help his case or that cross-examination might elicit information harmful to Dunn. *See Ex parte McFarland*, 163 S.W.3d 743, 757 (Tex. Crim. App. 2005) (orig. proceeding) (failing to call a witness was not ineffective, even if the witness would have been beneficial, since that would have allowed the State to cross-examine the witness about a past violent robbery). Without such a record, Dunn has failed to meet his burden.[3]

Therefore, we overrule Dunn's point of error.

## C.  State's Cross-Point

In a cross-point, the State acknowledges that the evidence for the enhancement was insufficient.[4] The judgments entered on their face prove insufficiency of the evidence to support

---

[3]We need not address *Strickland*'s second prong since it is Dunn's burden to establish that both prongs are met. *Lopez*, 343 S.W.3d at 144.

[4]*See Mizell v. State*, 119 S.W.3d 804, 805, 806 (Tex. Crim. App. 2003) ("We . . . address the question of whether the State may bring a cross-point in its appellate brief arguing that the defendant's sentence is illegal when the defendant appeals his conviction but the State does not file its own notice of appeal. Because we hold that any court—trial or appellate—may notice, on its own, an illegal sentence and rectify that error, the State was not

16

the enhancements. The first judgment used for enhancement was a possession of cocaine conviction from Midland County, Texas, on December 6, 2007. That judgment shows that the trial court revoked the deferred adjudication community supervision, adjudicated Dunn guilty, and placed him on community supervision. The second enhancement was based on a conviction from the same day. The second judgment shows that Dunn was convicted of credit card abuse and was placed on community supervision.

A conviction is only eligible for enhancement if the sentence confines the defendant. *See Donaldson v. State*, 476 S.W.3d 433, 438 (Tex. Crim. App. 2015) ("Section 12.425 does not contain any statutory exception allowing enhancement through the use of conviction resulting in an un-revoked probation."). Neither of those judgments ordered confinement, thus the enhancements are not valid.

Therefore, we sustain the State's cross-point.

## IV. Conclusion

While we affirm Dunn's conviction, we reverse the trial court's judgment because it contains an illegal sentence, and we remand the case to the trial court for a new punishment trial. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b).

Jeff Rambin
Justice

Date Submitted:     April 7, 2025
Date Decided:       June 25, 2025

Do Not Publish

---

obligated to file a notice of appeal before the court of appeals could address that issue. . . . A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal." (footnote omitted)); *see also Pfeiffer v. State*, 363 S.W.3d 594, 600–01 (Tex. Crim. App. 2012).

17